SHORTESS, Judge.
Calvin Collier (defendant) was charged by bill of information with armed robbery. LSA-R.S. 14:64. He pled not guilty, and trial by jury commenced on October 28, 1986. Upon completion of the trial, the jury was unable to reach a verdict and advised the court that it was hopelessly deadlocked. The court declared a mistrial and reassigned the matter for a second trial which commenced on March 16, 1987. After completion of the second trial, defendant was convicted as charged by a 10-2 vote of the jury. Defendant received a sentence of 25 years at hard labor without benefit of parole, probation, or suspension of sentence. He has appealed, urging fourteen assignments of error.
*587 FACTS
On October 22, 1985, Jeff Hornsby and Bennie Prejean, desk employees of La Quinta Hotel in Baton Rouge, were robbed by four unmasked black men, two of whom carried handguns. The robbery occurred around 6:30 p.m., when the robbers stormed into the office and demanded that Hornsby and Prejean give them cash. Two robbers held guns to their heads, while the other two gathered approximately $425.00 from the cash drawer in the front and the change fund located in a safety deposit box. The robbery took approximately two or three minutes, and the robbers fled through the same door they entered. Defendant was later arrested after Prejean identified him from a photographic lineup prepared after the police received an anonymous tip through the Crime Stoppers program.
ASSIGNMENT OF ERROR NUMBER ONE
Defendant complains of the trial court's ruling ordering a mistrial at his first trial. According to defendant, that ruling, which was based upon the jury’s inability to agree upon a verdict, constituted an abuse of discretion, making it impossible for him to receive a fair adjudication at the second trial. In his argument on this error, defendant adds a second, quite different claim that is related to the first only tangentially, namely, that he was deprived of his right to due process when the trial court denied his request for the production of the transcript of the first trial. Defendant maintains that that transcript could have been used to impeach testimony of the state’s witnesses.
Louisiana Code of Criminal Procedure article 775 authorizes a trial court to declare a mistrial when the jury is unable to agree upon a verdict. State v. Lang, 430 So.2d 1239 (La.App. 1st Cir.1983). The question of discharge of the jury because of the inability to agree on a verdict is within the sound discretion of the trial court, and exercise of such discretion is not ordinarily subject to review. State v. Rodman, 208 La. 523, 23 So.2d 204, 205 (1945).
The facts relevant to the present claim are set out in the minutes. According to the record, the jury retired for deliberation at 5:40 p.m. on the afternoon of October 29, 1986. At 8:05 p.m. that evening, the jury returned to the courtroom and informed the court that it was unable to agree upon a verdict. The court, however, refused to grant a mistrial at that point and, instead, instructed the jurors to continue their deliberations. Three hours later, at 11:05 p.m., the jury returned to the courtroom and advised the court that it was “hopelessly deadlocked.” Satisfied that the jury could not agree, the court then declared a mistrial. The propriety of a mistrial is to be determined by reference to the facts and circumstances evident at the time of the court’s decision. We find no error.
Defendant’s argument that prejudice from the granting of the mistrial could have been mitigated by the trial court’s ordering of a transcript of the first trial is also meritless. Defendant’s argument creates the impression that he moved for production of the transcript prior to the second trial. However, a review of the record reveals that while defendant did file a motion for the production of the transcript of the first trial, it was not done until after the second trial was completed. Accordingly, this assignment of error lacks merit. ASSIGNMENT OF ERROR NUMBER TWO
Defendant alleges that the trial court improperly denied his challenge for cause of prospective juror John Wilder, whose brother was a law enforcement officer killed in the line of duty.
Defendant’s argument is based on Louisiana Code of Criminal Procedure Article 797(2), which mandates:
The state or the defendant may challenge a juror for cause on the ground that:
*• * * # # *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he *588 declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence....
The facte developed during Wilder’s voir dire show that his older brother was a deputy sheriff who was killed during the Black Muslim riot in January, 1972, but that Wilder could be fair and impartial to defendant, who was only about eight years old at the time of his brother’s death. The trial court evaluated and weighed Wilder’s impartiality and ruled:
I’m going to deny the challenge for cause. Mr. Wilder has indicated he can be fair and impartial, and he did not hold anything against anybody else other than the individual that — whoever he might have been — that had caused the death of his brother. .
At this point, defendant exercised his first peremptory challenge to excuse Wilder. When the jury was empaneled, defendant had no peremptory challenges remaining.
The Louisiana Supreme Court has held that:
[S]ervice on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause, although such association does not automatically disqualify a prospective juror.
State v. Lewis, 391 So.2d 1156, 1158 (La. 1980). It is well settled that the mere relationship of a potential juror to a law enforcement officer is not of itself grounds for a challenge for cause. Rather, the question presented is whether the venireman could assess the credibility of each witness independent of his relationship with members of law enforcement. The trial court is afforded great discretion in making this decision, and its ruling will not be overturned absent an abuse of that discretion. State v. Heard, 408 So.2d 1247, 1249 (La.1982).
The particular principles espoused in regard to the relationship of a potential juror to a law enforcement officer apply also to the relationship between a potential juror and a victim of a criminal act.
A review of the Louisiana jurisprudence in this area shows that upon proper evaluation by the trial court, jurors with direct relationships to law enforcement officers and crime victims have been empaneled despite challenges for cause. In State v. Pettaway, 450 So.2d 1345, 1358 (La.App. 2d Cir.), writ denied, 456 So.2d 171 (La.1984), the trial court was found not to have abused its discretion in denying the defense’s challenge for cause although the juror had a relative who was a murdered law enforcement officer. In State v. Valentine, 464 So.2d 1091, 1095 (La.App. 1st Cir.), writ denied, 468 So.2d 572 (La.1985), the trial court was similarly upheld in regard to both a venireman who had a relative in law enforcement and a second one who had a murdered relative. See also State v. Sonnier, 379 So.2d 1336, 1351 (La.1979), and State v. Munzy, 464 So.2d 1040, 1045-46 (La.App. 1st Cir.), writ denied, 468 So.2d 1203 (La.1985).
Defendant argued only that Wilder’s brother had been killed during a confrontation between Black Muslims and the police. He concluded “that was a black confrontation, and the accused in this case is black. I just don’t believe that Mr. Wilder could be fair_” Notwithstanding how persuasive this fact was to the defense, the trial court properly denied his challenge for cause in light of its conclusion that Wilder could be a fair and impartial juror. Accordingly, defendant’s second assignment of error is without merit.
ASSIGNMENTS OF ERROR NUMBERS THREE, FOUR, AND FIVE
By these assignments, defendant complains that the trial court failed to sustain his objection to the state’s use of its peremptory challenges to excuse prospective jurors solely on the basis of their race, in violation of the holding in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). In Batson, the U.S. Supreme Court held that the Equal Protection Clause forbids the state from using its peremptory challenges to strike potential jurors of the defendant’s race solely on account of their race or on the assumption that jurors of the defendant’s race will be *589 unable to impartially consider the state s case against the defendant.
In raising a Batson claim, the defendant must show that: (1) he is a member of a cognizable racial group, (2) the prosecutor has exercised peremptory challenges toward the elimination of venire members of his race, and (3) the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. A defendant makes a prima facie showing of discrimination by showing the above three factors and thereby compels the state to come forward with a neutral explanation for challenging black jurors. Batson, 106 S.Ct. at 1723.
At the time defendant made his Batson objection, he complained that the state had used five of its peremptory challenges for blacks. The court noted that the jury composition at that time was two blacks and seven whites and then asked the state, “Do you want to state your reasons under Bat-son? ” The state agreed and the assistant district attorney proceeded to articulate his reasons for exercising his five peremptory challenges. At the conclusion of the state’s explanation, the court said:
According to Batson and the — I previously ruled that the state had systematically excluded. The First Circuit said all they have to do is give reasons that are not related to race. It doesn’t give any guidelines on what’s a good reason. We have two black jurors accepted by the state. We have seven whites. I prefer to have a jury that is at least 25 per cent black, since that is the composition of the parish. We only have two out of nine now. When we had two out of eight, it was 25 per cent even. There have been no proposed solutions. The panel has been — looking out at the panel, it looks like it’s running about 25 per cent black out in the audience. I don’t know what the solutions are. I wish there were a solution where when you get down to less than 25 per cent, you excluded — only took the remaining blacks and just pick and choose from those. There is no such procedure. And Batson and the succeeding cases don’t give us any solution or guideline. So it’s my understanding and position is all I — is the D.A. gives his reasons. So long as they’re not based on race, I have to find that they’re satisfactory.
We note that jury selection originally began when a panel of 48 prospective jurors was brought into the courtroom. The record does not reflect the racial composition of this panel. The jury which was ultimately selected from said panel consisted of ten white jurors and two black jurors. The first juror selected, Rose Jones, was black, as was Bernice Sideboard, the eighth juror selected. During the course of voir dire, the defendant exhausted his peremptory challenges, and the state used eight of its challenges. All of the state’s challenges were exercised against blacks. The court excused one potential juror for cause after both sides agreed. The alternate jurors were accepted by both sides without challenges.
If the effect of the trial court’s action can be considered a finding that a prima facie showing of discrimination had been made by defendant, we find that the court erred. Batson is instructive on this point. Specifically, the Supreme Court said:
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a “pattern” of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor’s questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Batson, 106 S.Ct. at 1723. None of the circumstances present in the illustrative ex- *590 ampies given above are present under the facts of this case. There was no “pattern” of strikes against blacks giving rise to an inference of discrimination because the first juror and eighth juror selected were both black. Our examination of the voir dire shows there was absolutely no reference to racial factors or other such considerations. Nor were there any other circumstances concerning the prosecution’s use of peremptory challenges shown on the record which the trial court could have used to make a finding of discrimination against black jurors.
Batson is not to be read so as to require a jury representation proportionate to a defendant’s race’s proportion to the population of the area from which the venire is drawn. Batson does not stand for such a quantitative approach; rather, a trial court must weigh all the circumstances surrounding the jury selection before finding purposeful discrimination. The facts of this case will not support such a finding. These assignments of error are without merit. ASSIGNMENT OF ERROR NUMBER SIX
Defendant contends that the trial court erred when it denied his challenge for cause of prospective juror Judy Home because she and an empaneled juror, Linda Roberts, were sisters, which made her incapable of making a fair and impartial judgment. Louisiana Code of Criminal Procedure article 797 furnishes an exclusive list of grounds upon which the defendant may base a challenge for cause of a prospective juror. A sororal relationship between two jurors does not constitute one of the enumerated grounds. In an analogous claim, the Louisiana Supreme Court has held that a filial relationship between an empaneled juror and a venireman does not constitute a ground for a challenge for cause. State v. Redfud, 325 So.2d 595, 597 (La.1976).
Accepting the above argument, defendant’s only feasible remaining ground for this challenge for cause is that Home could not be impartial under Article 797(2). In the colloquy during voir dire, Home’s ability to render a fair and impartial decision is clearly evidenced. Accordingly, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant alleges that the trial court committed error when it failed to grant his motion to suppress a photographic lineup. This motion was based upon the claim that since Bennie Prejean had written his name and date next to defendant’s photograph after his identification, the photographic lineup was a suggestive identification which presented a likelihood of incorrect identification.
A defendant attempting to suppress an identification must prove (1) that the identification was suggestive, and (2) that there was a likelihood of incorrect identification in the identification procedure. State v. Lucky, 453 So.2d 1234, 1238 (La.App. 1st Cir.), writ not considered, 459 So.2d 529 (La.1984). A lineup is unduly suggestive if the identification procedure displays the defendant so that the witness’ attention is focused on the defendant. State v. Nathan, 444 So.2d 231, 235 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984).
We note that the photograph was marked after defendant was identified as the armed robber by Prejean and that Pre-jean marked the photograph without any suggestion. There is nothing to suggest that the instant photo array unduly focused attention on defendant. Thus, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant urges that the trial court erred when it allowed Jeff Hornsby, the other victim, to give testimony at defendant’s second trial which did not correspond to testimony he had given at defendant’s first trial, which ended in a mistrial. However, defendant does not allude to what the witness’ previous testimony was.
As previously noted, defendant did not timely move for production of the transcript of the first trial to aid in impeachment of witnesses. It is not the trial *591 court’s function to censor otherwise admissible testimony of a state witness. Thus, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER NINE
Defendant asserts that the trial court erred in allowing Bennie Prejean to identify defendant's photograph as the one he had previously picked as a likeness of his assailant in an out-of-court photographic lineup. The disputed photograph was relevant and properly accepted as a predicate to show the fairness of the photographic identification of defendant. See State v. Howard, 283 So.2d 199 (La.1973); State v. Mathis, 261 La. 564, 260 So.2d 625 (1972). Thus, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TEN
Defendant contends that the trial court erred in allowing the state, on redirect examination, to ask Detective Rollin Devenney how many photographic lineups he conducted in the course of a year. Defendant argues that the question was irrelevant.
Louisiana Revised Statute 15:441 defines relevant evidence as evidence tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. This statute further mandates that facts necessary to explain a relevant fact, or which support an inference raised by such a fact, are admissible. The determination of relevance lies within the discretion of the trial court and will not be disturbed absent a clear showing of abuse of that discretion. State v. West, 419 So.2d 868, 876 (La.1982).
Here, the state sought to reveal a reason why Devenney could not remember every detail about the photographic lineup and thereby buttress his testimony about the identification procedure utilized in the instant case. The question was clearly relevant as a fact explaining the identification of defendant, the sole issue at trial. Accordingly, this assignment is without merit.
ASSIGNMENT OF ERROR NUMBER ELEVEN
Defendant contends that the trial court erred by not allowing Nadine Town to testify about a book or record that she kept of the Now Faith Church of God in Christ’s congregation’s attendance.
At defendant’s first trial, defendant explored this area through a proffer. The substance of the profferred testimony reveals that no such written records were kept by Town. Town was ill at the time of this trial, and her prior testimony was read into the record. Defendant made no attempt to offer the questioned testimony into the record outside of the proffer and failed to make a contemporaneous objection. Therefore, defendant did not preserve this argument for review on appeal. LSA-C.Cr.P. art. 841. Accordingly, this assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER TWELVE
Defendant contends that the trial court committed error when it denied his motion for a new trial. The defendant’s contention is based specifically upon the following claims: (1) the provisions of LSA-R.S. 15:477.1, when applied to defendant’s case, denied him his constitutional right to confront the witnesses against him; (2) a fellow inmate incarcerated with defendant admitted his responsibility for the instant armed robbery to defendant; (3) an individual named Wanda Cushenberry provided the anonymous tip to the Crime Stoppers Program; and (4) Cushenberry additionally provided the authorities with names of five other individuals allegedly responsible for the instant offense. After reviewing the record, we conclude that the trial court did not err by denying defendant’s motion for a new trial or his amended motion for new trial on any of the grounds argued in brief.
As his first ground in support of the motions for a new trial, defendant urges that LSA-R.S. 15:477.1 is unconstitutional as applied to him as it denied him his right to confront the witnesses against him as guaranteed under the Sixth Amendment of the United States Constitution and Article *592 I, Section 16, of the Louisiana Constitution of 1974.
Louisiana Revised Statute 15:477.1 directs:
A. As used in this Section, the following terms shall have the following meanings unless the context clearly requires otherwise:
(1) “Crime stoppers organization” means a private, nonprofit organization that accepts and expends donations for rewards to persons who report to the organization information concerning criminal activity and that forwards the information to the appropriate law enforcement agency.
(2) “Privileged communication” means a statement by any person, in any manner whatsoever, to a crime stoppers organization for the purpose of reporting alleged criminal activity.
B. No person shall be required to disclose, by way of testimony or otherwise, a privileged communication between a person who submits a report of alleged criminal activity to a crime stoppers organization and the person who accepts the report on behalf of a crime stoppers organization or to produce, under subpoena, any records, documentary evidence, opinions, or decisions relating to such privileged communication:
(1) In connection with any criminal case or proceeding.
(2) By way of any discovery procedure.
(C) Any person arrested or charged with a criminal offense may petition the court for an in camera inspection of the records of a privileged communication concerning such person made to a crime stoppers organization. The petition shall allege facts showing that such records would provide evidence favorable to the defendant and relevant to the issue of guilt or punishment. If the court determines that the person is entitled to all or any part of such records, it may order production and disclosure as it deems appropriate.
The Confrontation Clause of the Sixth Amendment is a limitation on hearsay evidence used by the prosecution. The clause guarantees that, before hearsay is used against an accused, there must be sufficient indicia of reliability as to the statement; the prosecution must have made a good faith effort to obtain the declarant at trial; and, where possible, the defendant must be provided with an adequate opportunity to fully and fairly cross-examine the witnesses against him. United States v. Morgan, 757 F.2d 1074 (10th Cir.1985). In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 791 n. 2, 17 L.Ed.2d 730 (1967), the United States Supreme Court noted that a criminal defendant is not deprived of his right to confrontation when the prosecution does not call an informant as a witness to testify against him. The accused generally may not confront an informant who neither testifies nor provides evidence at trial. United States v. Porter, 764 F.2d 1 (1st Cir.1985), cert denied,— U.S. -, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); United States v. Francesco, 725 F.2d 817, 822 (1st Cir.1984); McAllister v. Brown, 555 F.2d 1277, 1278 (5th Cir.1977).
Under the above authorities, it is clear that the application of LSA-R.S. 15:477.1 did not deprive defendant of his right to confrontation. The “Crime Stoppers” information did not provide any evidence which was used at trial against him, nor did the informant testify against him. Instead, the individual simply provided information to the police which resulted in the inclusion of defendant’s photograph in the photographic lineup. Thus, the informant was not a “witness”; and, consequently, defendant has no constitutional right to confront her.
Defendant’s other grounds were apparently directed toward providing new and material evidence which might justify a new trial. See LSA-C.Cr.P. art. 851(3).
We note initially that defendant's motions were not in compliance with Louisiana Code of Criminal Procedure article 854, as neither defendant nor his counsel swore to the allegation of fact, nor was there any allegation of reasonable diligence by the defense. In addition, we do not find that *593 any evidence presented at the hearing on the motion for a new trial would have resulted in a different verdict if it had been presented at trial.
Malcolm James, the inmate who had allegedly taken responsibility for the armed robbery, refused to admit his alleged guilt at the hearing on the motion for new trial. The other witness, Kathy Guss, testified that the informant was Wanda Cushenberry, who had provided several other names along with defendant’s name. As was discussed above, the name of an informant is not a relevant factor to the case where he provided no evidence that was utilized at trial. The trial court held:
The only thing that I’ve seen so far is that Kirace Norman, Tyrone Washington and Troy Washington may have also been named. I don’t know whether their pictures were shown or not, but if their pictures were shown and they were identified, the facts that they were friends of [defendant] would not assist [defendant] ... so I would deny the Motion for New Trial in that it is not newly discovered evidence and ... would not affect the outcome of the trial.
The Louisiana Supreme Court has held: [A] new trial will not be granted unless this new evidence is of such a nature that it would probably have changed the verdict, [citations omitted] Additionally, the trial court has discretion to grant or deny a new trial when it is sought on the ground of newly discovered evidence which is suspicious or incredible, [citations omitted] In such situations the decision to grant or deny a new trial will not be disturbed on appeal.
State v. Lee, 340 So.2d 180, 188 (La.1976).
We find no abuse of discretion herein. Thus, this assignment of error lacks merit. ASSIGNMENT OF ERROR NUMBER THIRTEEN
By this assignment, defendant contends that his twenty-five-year sentence without benefit of parole, probation, or suspension of sentence was excessive primarily because the jurors in his first trial were unable to reach a verdict. Defendant suggests that the inability of the initial jury to reach a verdict should have mitigated his sentence.
The trial court has wide discretion in imposition of a sentence within statutory limits. State v. Sepulvado, 367 So.2d 762 (La.1979). The penalty actually imposed by the trial court was about one-fourth of the maximum assessable penalty. See LSA-R.S. 14:64. A review of the record in this case reveals that the trial court carefully particularized the sentence, considering mitigating and aggravating factors set forth in Louisiana Code of Criminal Procedure article 894.1 as they apply to defendant. In imposing sentence, the trial court noted that defendant had a criminal background, including a prior felony conviction. Cognizant that incarceration of defendant would work an economic hardship on his minor child, the trial court nevertheless opined that it was necessary because a lesser sentence would deprecate the seriousness of the crime.
We cannot say that the sentence imposed is excessive under the circumstances. The trial court fully considered the range of sentencing alternatives and individualized the sentence to the particular defendant for the particular crime involved. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FOURTEEN
By means of this assignment, defendant contends that the instant verdict is contrary to the law and the evidence. Defendant argues that the state failed to prove his identity as the perpetrator of the instant offense.
Where the key issue is defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of incorrect identification. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). After reviewing the entire record of evidence received at trial, we find that the state negated any reasonable probability of incorrect identification beyond a reasonable doubt. LSA-C.Cr.P. art. 821.
*594 To prove that defendant was one of the individuals who committed this crime, the state presented evidence of Prejean’s identification of defendant in a photographic lineup and in court. Defendant attempted to rebut the evidence with alibi testimony, provided by relatives and friends, that he was attending a church revival at the time the robbery was committed. The jury’s verdict indicates that, after considering credibility of the witnesses and weighing the evidence, it accepted Prejean’s testimony. When there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, it is a matter of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Id. For the foregoing reasons, these assignments of error are without merit.
For the reasons stated, defendant’s conviction and sentence are affirmed.
AFFIRMED.