SHORTESS, Judge,
concurring.
My examination of the voir dire reveals that prospective jurors were called for questioning in panels of six. It took five rounds to select a 12-person jury. No blacks were chosen in the first round, but two were peremptorily challenged by the state. One black was chosen in the second round, and one black was excluded by the state peremptorily. At that time four whites and one black had been sworn in as trial jurors. After the third round, the racial composition was six whites and two blacks. The state exercised no peremptory challenges in the third round. In the fourth round, the state exercised three peremptory challenges against blacks. At this point the composition of the jury was eight whites and two blacks, and the state had exercised six peremptory challenges and had two remaining. In the final round, the state exercised its remaining peremptory challenges against two blacks before the final black was selected. The final composition of the jury was nine whites and three blacks. The state used all eight of its challenges on blacks.
After each round, the defense attempted to trigger a Batson inquiry. However, the requests were denied by the trial court. The state was therefore never required to give a neutral explanation for its challenges. In State v. Collier, 522 So.2d 584, at 590 (La.App. 1st Cir.1988), we said:
Batson is not to be read so as to require a jury representation proportionate to a defendant’s race’s proportion to the population of the area from which the venire is drawn. Batson does not stand for such a quantitative approach; rather, a trial court must weigh all the circumstances surrounding the jury selection before finding purposeful discrimination.
For purposes of this remand, the following language from Batson should be sufficient, as it is instructional as to how the trial court should proceed under such circumstances:
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a “pattern” of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor’s questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory *734 purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor’s use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Batson, 106 S.Ct. at 1723.
Did the state develop a pattern of strikes which might have given rise to an inference of discrimination? Should the trial court have required an explanation from the state to support or refute discriminatory inferences? The trial court is in the best position to answer these queries, so I agree that a remand is necessary.
I respectfully concur.