553 So.2d 815 (1989)
STATE of Louisiana
v.
Calvin COLLIER.
No. 88-K-1012.
Supreme Court of Louisiana.
December 11, 1989.
*816 Otha Curtis Nelson, Sr., Baton Rouge, Author Rel Joiner, for applicant.
William J. Guste, Jr., Atty. Gen., Bryan E. Bush, Jr., Dist. Atty., Kay Kirkpatrick, Janis L. Kile, Asst. Dist. Atty., for respondent.
LEMMON, Justice.
The issue in this case is whether the prosecutor used his peremptory challenges to exclude blacks from the petit jury solely on the basis of their race in violation of the Equal Protection Clause of the Fourteenth Amendment, as interpreted in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
*817 Facts
Defendant, a black male, was charged with armed robbery. His first trial ended in a mistrial when a jury composed of nine whites and three blacks could not agree on the ten votes necessary for a verdict.
During the voir dire in defendant's second trial his attorney raised an objection that five black prospective jurors had been improperly excused by the prosecutor on peremptory challenges.[1] The prosecutor, upon instruction by the trial judge, offered racially neutral explanations for these challenges, and the trial judge allowed voir dire to continue. After two more black jurors were peremptorily challenged by the prosecutor, the defense raised a second objection. The prosecutor again offered racially neutral explanations, and the trial judge, although expressing concern over the racial composition of the jury in proportion to that of the parish, allowed voir dire to proceed. The defense made another objection after the prosecutor used his eighth peremptory challenge to exclude a black juror, but the trial judge overruled the objection after the prosecutor gave racially neutral reasons for the challenge.
When voir dire was completed, the prosecutor had used eight of his twelve peremptory challenges. All eight of the prospective jurors who were challenged peremptorily were black. The two black jurors who served on the jury were the first and the eighth jurors chosen.
Defendant was tried and convicted by a twelve-person jury composed of ten white jurors and two black jurors. The poll of the jury was not recorded, but the vote was ten to two for a verdict of guilty as charged.
The court of appeal affirmed the conviction, finding that defendant had not established a prima facie case of discrimination in the prosecutor's exercise of peremptory challenges. 522 So.2d 584. The court noted that there was no pattern of strikes against blacks, the first and eighth selected jurors being black, and there were absolutely no references in the record to racial factors or other such considerations.
We granted defendant's application for certiorari to determine the correctness of the rulings of the courts below. 536 So.2d 1226.
The Batson Decision
In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Court recognized the principle that "a state's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause". Id. at 203-204, 85 S.Ct. at 826. However, the Court required, as proof of discriminatory purpose sufficient to establish an equal protection violation, a showing of systematic exclusion of jurors on account of race over a number of cases. Id. at 227, 85 S.Ct. at 839.
The Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), changed this burden, deciding that evidence of the prosecutor's discriminatory use of peremptory challenges in a single case may be sufficient to constitute an equal protection violation. The Court held that an equal protection violation occurs when the prosecutor, in a case against a member of a cognizable racial group, exercises peremptory challenges to remove members of the defendant's race from the jury venire for a discriminatory purpose. The Court set standards for assessing a prima facie case of purposeful discrimination and placed the burden on the prosecutor, after such a prima facie showing, to come forward with a neutral explanation for challenging black jurors that is related to the particular case.[2]
The Court imposed the requirement of a timely objection to the peremptory challenges, but decided not to formulate a procedure *818 for implementing the holding of the case. Noting the wide variety of jury selection practices in state and federal courts across the country, the Court declined to consider whether it is more appropriate for the trial court, upon a finding of discriminatory purpose, to discharge the venire and select a new jury from a panel not previously associated with the case or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.
Justice Powell's majority opinion in Batson, along with the concurring opinion of Justice White (the author of Swain), placed considerable trust in the perceptive ability and fair-minded attitude of trial judges. Because a trial judge's findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings should be entitled to great deference by a reviewing court. Id. at 98, note 21, 106 S.Ct. at 1724, note 21.
It has been predicted that the effectiveness of the Batson decision in eliminating racially motivated challenges will depend upon the level of scrutiny applied in the determination of the validity of the racially neutral explanations advanced by the prosecutor for the exercise of peremptory challenges against blacks. Raphael, Discriminatory Jury Selection: Lower Court Implementation of Batson v. Kentucky, 25 Willamette L.J. 259 (1989). In the more than three years since the Batson decision no previous applications for certiorari in post-Batson cases on direct review have raised serious issues as to the trial court's abuse of discretion in finding that the prosecutor advanced valid racially neutral reasons for striking blacks from the jury.[3] Perhaps this is an indication that the trial courts of this state have been successful in recognizing prosecutorial pretext in voir dire and in separating valid racially neutral reasons from pretexts designed to hide discriminatory purpose. Nevertheless, we believe that the Batson objective of limiting racial discrimination in jury selection is attainable only if trial judges rigorously scrutinize prosecutors' explanations of challenges against blacks, particularly those based on irrational or intuitive reasons given after a prima facie showing of discriminatory intent. We further believe that appellate courts should accord great deference to rulings by trial judges in these areas.
In order to provide better guidance for the trial courts of this state we will review in more detail the required standards established by Batson and will apply these standards to the facts of this case.
Prima Facie Case by the Defendant
Under Batson the defendant, after timely objection, must demonstrate a prima facie case of purposeful discrimination.[4] To do so, the defendant must establish that he is a member of a cognizable racial group, that the prosecutor has exercised his peremptory challenges to remove other members of that race from the jury, and that these facts, along with the other relevant circumstances, raise an inference that the prosecutor used his peremptory challenges to exclude the veniremen from the jury on account of their race. Id. at 96, 106 S.Ct. at 1722.
*819 The trial judge must determine whether the defendant has established the requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. Id. at 96-97, 106 S.Ct. at 1722-1723.
In the present case the trial judge, without expressly ruling on the issue, apparently found that defendant adequately established a prima facie case of purposeful discrimination.[5] After defendant made his first Batson objection, the trial judge expressed concern over the composition of the partial jury (two blacks and seven whites) and then instructed the prosecutor to "state your reasons under Batson". The judge allowed the voir dire to proceed, but also required the prosecutor to state reasons for his challenges when the defendant raised the second and third Batson objections.
The court of appeal concluded that the trial court erred in determining that a prima facie showing of purposeful discrimination had been made by the defendant. The court stated:
There was no `pattern' of strikes against blacks giving rise to an inference of discrimination because the first juror and eighth juror selected were both black. Our examination of the voir dire shows there was absolutely no reference to racial factors or other such considerations. Nor were there any other circumstances shown on the record which the trial court could have used to make a finding of discrimination against black jurors.
522 So.2d at 590.
We disagree with the court of appeal. An examination of all of the relevant circumstances surrounding the voir dire could reasonably lead a trial judge to infer the existence of purposeful discrimination.
Defendant was black and a member of a cognizable racial group. There was a distinct pattern of strikes against black jurors in that the prosecutor used all eight of his exercised peremptory challenges to excuse black persons from the jury. Although two of the twelve persons who served on the jury were black, the mere presence of blacks on a jury does not necessarily defeat a Batson claim.[6] The Court in Batson noted that "`[a] single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions'". Id., 476 U.S. at 95, 106 S.Ct. at 1722 (quoting Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266, n. 14, 97 S.Ct. 555, 564, n. 14, 50 L.Ed.2d 450 (1950)). See also U.S. v. demons, 843 F.2d 741 (3rd Cir. 1988), in which the court stated that "striking a single black juror could constitute a prima facie case even when blacks ultimately sit on the panel and even when valid reasons exist for striking other blacks", and U.S. v. David, 803 F.2d 1567 (11th Cir.1986), which noted that "the striking of one black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown".
Moreover, the presence of two black persons on defendant's jury did not necessarily defeat an inference of discrimination. Because only ten votes were needed to convict defendant of armed robbery, the prosecutor could have assumed, contrary to Batson's admonition that it was unacceptable to do so, that all black jurors would vote on the basis of racial bias and then purposefully discriminated by limiting *820 the number of blacks on the jury to two.[7]
We conclude, as apparently did the trial judge, that the showing of the pattern of strikes by the prosecutor and the other relevant circumstances was sufficient for the defense to establish a prima facie case of purposeful discrimination.
Rebuttal by the Prosecutor
Once the defendant makes a prima facie showing of purposeful discrimination, Batson shifts the burden to the prosecutor to come forward with a neutral explanation for challenging the black jurors. This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of their shared race. Neither may the prosecutor merely assert good faith or deny discriminatory motive. The neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case at bar. Id. 476 U.S. at 97-98, 106 S.Ct. at 1723; Belcuore, Restricting Racially Motivated Peremptory Challenges, 24 Fed.B.J. 39 (Jan.1987).
After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. Tompkins v. Texas, 774 S.W.2d 195, 202 (Tx.Crim. App.1987), affd. without opinion by an equally divided court, ___ U.S. ___, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); Batson, 476 U.S. at 98, 106 S.Ct. at 1723.
In the present case defendant's prima facie showing raised an inference of discrimination. Therefore, the burden of going forward shifted to the prosecutor to express racially neutral reasons for challenging each of the black jurors. Defendant's showing of purposeful discrimination must be upheld unless the prosecutor contradicts or rebuts this showing. Tompkins v. Texas, supra.
The prosecutor offered various explanations for excusing the eight blacks from the jury.[8] He stated that Lubertha Jones was excused because she had only an eighth grade education and did not seem to be aware of the verdict rendered in a civil trial at which she had served on a jury. She answered that "they were free" when questioned about the verdict in that civil case. The prosecutor did not believe Jones would comprehend the present proceeding.
Andra Thompson was excused because he was a "smart ass". According to the prosecutor, Thompson appeared to be looking for a joke and did not take the proceedings seriously.
Nathaniel Blakes was excused because he appeared to have a jaded attitude toward the police as a result of dissatisfaction after police investigations of crimes in which he or his mother had been the victim. The prosecutor doubted that Blakes could give a police officer the same consideration in determining credibility and truthfulness as he could any other witness.
Carl Vance was excused because he had "a blank stare" on his face and seemed "disinterested in the proceedings". According to the prosecutor, Vance appeared to be hostile to counsel for both sides. The prosecutor also was concerned that Vance had been terminated by the Ethyl Corporation *821 after more than eight years and had become a truck driver, but did not want to inquire into the matter at the risk of embarrassing the prospective juror.
Audrey Williams was excluded because she had been unemployed in excess of one year, was evasive about her prior work history, and indicated that she had 600 hours in a business college. The prosecutor found the latter assertion "very difficult to believe".
Charley Jones, who was a member of the Mount Zion City Baptist Church, and Gloria Spears, who was a member of the Zion City Baptist church, were excused because they were Baptist. The prosecutor stated:
I felt that any sympathy they might have in the area of religion would lie with this defendant and that they might tend to acquit him based solely upon the fact that he claimed to have been present at a baptist affiliated revival service rather than any indications they might receive from other sources that testify from the witness stand as to this defendant's guilt. They are not being excluded on the basis of their religion alone, but only on the basis of any prejudice that they may have because this man is going to claim to have been at a religious service on the date of the armed robbery.
Defense counsel then informed the court that defendant had not been at a Baptist service on the night of the robbery, but had been at a service sponsored by the Church of God in Christ. The prosecutor acknowledged his mistake, but decided to "stand on the grounds as stated".
The last peremptory challenge was exercised against Mary Matthews, whose son had been "shot at" while working on his car. Inasmuch as Matthews dropped the case because a teenager did the shooting, the prosecutor thought Matthews was "too tolerant of crime".
The trial judge did not reach the point of assessing the weight and credibility of the explanations, but merely accepted the explanations because they were racially neutral on their face.[9] "Rubber stamp" approval of any non-racial explanation, no matter how whimsical or fanciful, would destroy Batson's objective to ensure that no citizen is disqualified from jury service because of his race. State v. Butler, 731 S.W.2d 265 (Mo.App. 1987). Presumably, any prosecutor could confect a set of standard racially neutral explanations for dismissing a juror. See Stewart, Court Rules Against Jury Selection Based on Race, 73 A.B.A.J. 68, 70 (1986). If trial courts were required to find satisfactory any reason given by the prosecutor not based on race, only prosecutors who admitted point blank that they excluded veniremen because of their race would be found in violation of the Fourteenth Amendment's guarantee of equal protection. As the court stated in State v. Slappy, 522 So.2d 18, 22 (Fla. 1988):
[A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable and, second, not a pretext. These two requirements are necessary to demonstrate `clear and reasonably specific... legitimate reasons.' Batson, 476 U.S. at 89 n. 20, 106 S.Ct. at 1724 n. 20. Moreover, they serve the goal of demonstrating a `neutral explanation related to the particular case to be tried,' id. at 89, 106 S.Ct at 1723, and that `the questioned challenges were not exercised solely because of the prospective jurors' race.'
The trial judge in this case therefore applied the incorrect standard in determining the validity of the prosecutor's reasons for challenging the black jurors.[10] *822 The judge failed to assess the weight and credibility of each explanation and to make the necessary finding whether the explanation was legitimate and acceptable.
As noted earlier, a reviewing court should generally accord the trial court great discretion in its determination whether there was purposeful discrimination in the prosecutor's exercise of peremptory challenges. This is so because the decision usually turns on credibility determinations. In the present case, however, the trial court applied the incorrect standard. Nevertheless, it is not necessary to remand the case to the trial court for a hearing on the issue and for application of the correct standard. Even if the trial court had applied the correct standard, the reasons given by the prosecutor were not sufficient to rebut the prima facie showing of discrimination, at least as regards jurors Charley Jones and Gloria Spears.
The sole reason given for excluding these jurors was the fact they were Baptist. However, the prosecutor did not pursue any consistent, trial-related strategy of striking jurors with the same or similar characteristics. At the time these jurors were excused, the prosecutor had already accepted two black Baptists and two whites who attended the Baptist Church (although one white juror was subsequently excused by the defense). The prosecutor later accepted an alternate juror who was also a Baptist.
Other courts have rejected explanations for challenges when the prosecutor failed to challenge other jurors, not of the defendant's race, who shared the same characteristic as that claimed by the prosecutor as the reason for the challenge.[11] See U.S. v. demons, 843 F.2d 741 (3rd Cir. 1988); U.S. v. David, 803 F.2d 1567 (11th Cir. 1986); State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986); State v. Slappy, 522 So.2d 18 (Fla.1988); State v. Butler, 731 S.W.2d 265 (Mo.App. 1987); Floyd v. State, 511 So.2d 762 (Fla.Dist.Ct.App.1987); and People v. Mora, 190 Cal.App.3d 208, 235 Cal.Rptr. 340 (1987). However, the fact that a prosecutor excuses one person with a particular characteristic (such as religious affiliation) and not another similarly situated person does not in itself show that the prosecutor's explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the prosecutor could have reasonably believed would make him desirable as a juror. People v. Young, 128 Ill.2d 1, 131 Ill.Dec. 78, 538 N.E.2d 453 (1989).
In the present case, however, the prosecutor did not even inquire into the religious affiliation of any juror, black or white. Only the defense made such inquiries.[12] Religious affiliation apparently played no part in the prosecutor's selection strategy until he exercised his sixth and seventh peremptory challenges on Charley Jones and Gloria Spears, at which time nine jurors had been accepted, three of whom were Baptists. Moreover, the prosecutor did not seek additional information about religious beliefs or practices from any of the Baptist jurors who served on the jury *823 or from those who were excused.[13] Significantly, the white Baptist who served on this jury had been on a previous jury which acquitted a person accused of murder. Of the other six jurors excused by the prosecutor on peremptory challenges, four (Luberta Jones, Carl Vance, Audry Williams and Mary Matthews) were Baptist, but the prosecutor did not mention religious affiliation in his reasons for the challenges.
Other than race or religion, there was no other apparent reason to exclude the two black Baptists. Charley Jones had worked as a maintenance coordinator for Ciba-Geigy for twenty years, had a college degree in business administration, was a family man, had no prior jury experience and had no close friends in law enforcement. Gloria Spears had a college degree, had worked as a secretary before marrying and having three children, had been a cook in a retirement home for two years, and had no close friends in law enforcement.
Furthermore, any prosecutorial strategy in excusing Charley Jones and Gloria Spears in order to avoid seating additional Baptists and minimize the risk that religious affiliation would play a decisive role in the verdict is undermined by the fact that the three Baptists already seated could force a deadlocked jury if they voted solely by religious affiliation.
The record in this case strongly suggests that the prosecutor, already frustrated in defendant's first trial by a hung jury which included three blacks, pursued a strategy in the second trial of limiting the number of blacks on the jury to two, thus making a conviction possible even if all of the blacks on the jury voted according to racial bias.[14] This pattern of striking all black jurors (except two) continued in the face of mounting pressure by the trial court to select a jury more representative of the black population of the parish. The prosecutor's stated reason for excluding Charley Jones and Gloria Spears was inconsistent with his attitude on religious affiliation in the selection or rejection of other jurors and was insufficient to rebut the prima facie showing of purposeful discrimination.
Accordingly, the judgment of the court of appeal affirming the conviction and sentence is reversed, and the case is remanded to the district court for a new trial.
COLE, J., respectfully dissents.
MARCUS, J., dissents and assigns reasons.
WATSON, J., dissents for reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
I agree with the court of appeal that defendant did not establish a prima facie case of purposeful discrimination in the prosecutor's exercise of peremptory challenges. Accordingly, I respectfully dissent.
NOTES
[1] At that point nine jurors had been chosen, two of whom were black.
[2] The dissenters protested that race, religion, nationality, occupation and the like have long been a valid basis for exercising peremptory challenges and that there is no equal protection violation as long as peremptory challenges are used across-the-board to exclude jurors of all races and nationalities based on their race or nationality.
[3] This court in State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), discussed the discriminatory use of peremptory challenges in the context of a death penalty case which was tried before the Batson decision, but which was pending on direct review when Batson was decided. The Batson standards were therefore applicable. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

In Thompson the prosecutor exercised all eight of his peremptory challenges against blacks, but had accepted seven blacks prior to exhausting his peremptory challenges. Of these seven, three were excused by the defense, and four served on the jury. Noting the acceptance of the seven blacks and the absence of any suggestion of discriminatory intent in the prosecutor's overall questioning of jurors, this court concluded that the defense failed to establish a prima facie case of purposeful discrimination. This court also reviewed, and found valid, the prosecutor's explanation of each of the disputed challenges.
[4] The first objection in this case, although made after five black jurors had been challenged peremptorily by the prosecutor, was timely. The objection must be made before the completion of the jury panel. See State v. Williams, 524 So.2d 746 (La.1988).
[5] If the trial judge had not found there was a prima facie case of purposeful discrimination, there was no necessity to call for explanation of the challenges. Of course, the trial judge may have believed there was not a prima facie showing, but still required an explanation as a precaution in the event the appellate court determined there was a prima facie showing.
[6] Even under Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), this court has cautioned that occasional service of blacks does not negate systematic exclusion over an extended period of time. State v. Washington, 375 So.2d 1162 (La. 1979).
[7] This possibility distinguishes this case from the previously discussed decision in State v. Thompson, 516 So.2d 349 (La.1987), a first degree murder case in which the prosecutor accepted four blacks when a unanimous verdict was needed for a conviction. A further factor distinguishing the present case from Thompson is that the defense attorney did not exercise any of his peremptory challenges to exclude blacks.
[8] The trial judge in this case required both sides to submit their peremptory challenges in writing, and the objections and neutral explanations were received outside the presence of the prospective jurors. By this procedure (and perhaps by ruling on the objection before the challenge is announced), a trial judge may prevent a prospective juror from knowing that he was challenged, thereby avoiding prejudice in the event that the challenge is denied. In this manner the trial judge may preserve both options stated in Batson; that is, either to disallow the challenge and reinstate the improperly challenged juror or to discharge the venire.
[9] The judge stated: "So it's my understand and position is all Iis the D.A. gives his reasons. So long as they are not based on race, I have to find that they're satisfactory".
[10] The trial judge, in considering the Batson objections, also repeatedly expressed his concern that defendant would not have a jury of his peers if the racial composition of the petit jury was disproportionate to the racial composition of the parish. The Batson decision, however, did not rest on a defendant's Sixth Amendment right to a jury of his peers, but rather on a defendant's Fourteenth Amendment right to equal protection. Furthermore, the Supreme Court has held that the Sixth Amendment right to a fair cross-section of the community as a jury of one's peers has been held to apply only to the jury panel on the venire rather than to the selection of the petit jury. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). But see Illinois v. Holland, 121 Ill.2d 136, 117 Ill.Dec. 109, 520 N.E.2d 270 (1987), cert. granted ___ U.S. ___, 109 S.Ct. 1309, 103 L.Ed.2d 579 (1989) (argued October 11, 1989), in which one of the questions presented is whether the state's use of peremptory challenges to remove black prospective jurors on grounds of race violates the Sixth Amendment right to trial by jury.
[11] Other types of evidence which tend to show sham or pretext in a prosecutor's explanations include the directing of questions exclusively or disproportionately toward members of the defendant's race, the lack of questioning or mere cursory questioning before excluding such jurors, the giving of reasons not related to the case, and the failure to show that the group bias asserted in the explanation applied to the challenged juror. See generally In re Branch, 526 So.2d 609 (Ala. 1988).
[12] Indeed, the prosecutor accepted both alternate jurors before the defense questioned them about religious preference. One alternate was Baptist, but the race of the alternates was not shown in the record.
[13] This type of information might have justified the prosecutor's stated consideration that the two excused Baptist jurors were more likely to acquit defendant "based solely upon the fact that [the defendant] claimed to have been present at a Baptist affiliated revival service" than those Baptists who were selected.
[14] This court is not suggesting that jurors tend to vote strictly on racial grounds. Indeed, the Batson decision was aimed at negating strikes based on the assumption that jurors will vote along racial lines. However, in attempting to derive the true intent of the prosecutor in exercising his peremptory challenges, a court must consider whether the belief that black jurors will vote for black defendants because of their shared race played a role in the prosecutor's motive.