633 So.2d 723 (1993)
STATE of Louisiana
v.
Brian AZEMA.
No. 93 KA 0467.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
*724 Stephen E. Caillouet, Asst. Dist. Atty., Thibodaux, for plaintiff-appellee State.
John E. LeBlanc, Asst. Indigent Defender, Thibodaux, for defendant-appellant Brian Azema.
*725 Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
Brian Azema was charged by bill of information with distribution of cocaine, a violation of LSA-R.S. 40:967(A). He pled not guilty and, after trial by jury, was convicted as charged. The court sentenced him to serve a term of five years imprisonment at hard labor, with credit for time served. Defendant has appealed, urging three assignments of error. Assignment number one was not briefed on appeal and, therefore, is considered abandoned. See Uniform Rules Courts of Appeal, Rule 2-12.4.

FACTS
On the afternoon of December 6, 1991, Officer Brian Rhodes of the Thibodaux City Police Department worked undercover with the Lafourche Parish Drug Task Force. His employment as a police officer had been kept a secret, and he was familiar with people in the community. Thus, he was able to participate in drug buys without needing the assistance of a confidential informant. On the date of the offense, Officer Rhodes was driving around in Thibodaux when he saw Travis Ward and defendant standing in a parking lot. Rhodes recognized Ward as he had previously made cocaine purchases from him. Rhodes stopped his car to let Ward get in, drove around the block, and asked Ward if he had any cocaine. Ward replied that he did not, but that defendant did. When Rhodes returned to the parking lot, Ward got out of the car and spoke to defendant. Defendant gave Ward a rock of cocaine, and Ward brought the cocaine to Rhodes. Rhodes then gave Ward twenty-five dollars and observed Ward give the money to defendant. Scientific testing confirmed that the rock contained cocaine.

DENIAL OF DEFENDANT'S OBJECTION TO STATE'S USE OF A PEREMPTORY CHALLENGE TO EXCLUDE A BLACK JUROR
In assignment of error number two, defendant argues that the court erred when it refused to order the state to give a race-neutral reason for the state's peremptory challenge of a black juror.
The Equal Protection Clause prohibits both the prosecution and the defense from using peremptory challenges to exclude otherwise qualified and unbiased persons from a petit jury solely for reasons of their race. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); State v. Knox, 609 So.2d 803 (La.1992) (per curiam).
Under Batson and its progeny, after a timely objection, a defendant complaining of the state's use of peremptory challenges must demonstrate a prima facie case of purposeful discrimination. To do so, the defendant must establish that the prosecutor used his peremptory challenges to exclude the veniremen from the jury on account of their race. State v. Collier, 553 So.2d 815, 818 (La.1989). The trial court then must determine whether or not the defendant has established the requisite prima facie case. In making this determination, the court should consider all relevant circumstances, including any pattern of strikes by the prosecutor against jurors of a particular race and any questions or statements by the prosecutor during voir dire examination or in exercising the challenges which may support or refute an inference of purposeful discrimination. State v. Collier, 553 So.2d at 819. See generally State v. Chatman, 599 So.2d 335, 343-44 (La.App. 1st Cir.1992).
Once the defendant makes a prima facie showing of purposeful discrimination, the burden shifts to the prosecutor to come forward with neutral explanations for challenging the jurors. After the prosecutor has presented reasons for use of the peremptory challenges which on their face are racially neutral, the trial court must assess the weight and credibility of the explanations in order to determine whether or not there was purposeful discrimination in the use of the challenges. State v. Collier, 553 So.2d at 820. The reviewing court should generally accord the trial court great discretion in its determination of whether there was purposeful discrimination. *726 State v. Collier, 553 So.2d at 818.
In the instant case, during jury selection, the state exercised only one of its peremptory challenges. In doing so, it challenged Deborah Daggs. After the state challenged Daggs, defendant objected and asked the state to give its race-neutral reasons for excusing Daggs. Noting that the state already had accepted two black jurors, the court found that defendant had not established a prima facie case of purposeful discrimination and overruled the objection. At the time of the objection, eleven jurors had been accepted, two of whom were black. Defendant had peremptorily challenged five jurors, and the state had challenged one juror for cause. According to comments made by the court at the time of defendant's Batson objection, only three of the prospective jurors up to that point (including Daggs) were black.
On appeal, the state argues that, because it already had accepted two black jurors by the time defendant voiced his Batson objection, defendant failed to establish a prima facie case of purposeful discrimination. However, as the Louisiana Supreme Court indicated in Collier, the presence of two black persons on a jury, in those cases where the state needs only ten out of twelve votes for a conviction (as in the instant case), does not necessarily defeat an inference of discrimination. State v. Collier, 553 So.2d at 819.
Defendant asserts that, because the state never spoke to Daggs individually during the voir dire, the state "could not have relied on anything other than its intuition or its assumption that it needed to keep a third black juror" off of the jury. Our review of the voir dire confirms defendant's claim that the overwhelming majority of the questions asked of the prospective jurors by the court, the prosecutor, and defense counsel required only a "yes" or "no" answer and were asked of the prospective jurors as a group. Very few jurors gave any individual responses to any of the questions. However, each juror provided brief personal information in written jury questionnaires. We have reviewed these questionnaires and all statements made by the prosecutor in connection with the jury selection, and we find no evidence which supports an inference of purposeful discrimination.
The peremptory challenge of one black juror under the facts of this case simply does not establish a prima facie case of purposeful discrimination. Because defendant failed to make a prima facie showing of purposeful discrimination, the trial court did not err in refusing to require the state to provide race-neutral reasons for the challenge of Daggs. The assignment of error is without merit.

INSUFFICIENT EVIDENCE
In assignment of error number three, defendant argues that the evidence of his guilt was insufficient. He does not claim that the state failed to prove that he was the person who distributed a substance to the undercover officer. Instead, relying on a discrepancy in a date listed on two evidence forms, defendant maintains that the state failed to prove an adequate chain of custody for the cocaine.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821 B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
Officer Rhodes testified that, after receiving the piece of crack cocaine, he made notations concerning the transaction on a piece of yellow paper. On the piece of paper, he listed the date and time of the transaction as December 6, 1991, at 4:20 p.m. He then wrapped the cocaine in the paper and placed the packet in his glove compartment. The next day he transferred the packet to his supervisor, Agent Octavio Gonzalez of the Lafourche Parish Sheriff's Office. Upon receipt of the evidence, Agent Gonzalez made notations on the piece of yellow paper. He listed the date and time that he received the evidence as being December 6, 1991, at 3:30 p.m. (This would imply that Agent Gonzalez received the evidence almost an hour before *727 the offense). Gonzalez then placed the packet in a cellophane bag. On the bag, he recorded the date and time of Rhodes' recovery of the cocaine as being December 6, 1991, at 4:20 p.m., and the date and time he received the cocaine from Agent Rhodes as being December 6, 1991, at 3:30 p.m. He sealed the cellophane bag, secured the evidence, and later gave it to the evidence custodian, Detective Buck Carter. Detective Carter locked the evidence in the vault where it remained until Captain Paul Lirette, Jr., took it to the Louisiana State Police Crime Laboratory. After completion of the scientific analysis, Captain Lirette transported the evidence back to the sheriff's office and gave it to Detective Carter. Detective Carter again placed the evidence in the evidence vault, where it remained until its removal for use in court. Detective Carter testified that his evidence card originally listed Agent Rhodes' recovery of the cocaine and the subsequent delivery to Agent Gonzalez as both occurring on December 6, 1991. Upon talking to Agent Gonzalez earlier in the day, he changed his card to reflect that Agent Gonzalez received the evidence on December 7, 1991.
To properly identify evidence at trial, the identification can be visual or it can be by chain of custody of the object. State v. Francis, 597 So.2d 55, 59-60 (La.App. 1st Cir.1992). See also LSA-C.E. art. 901 A. Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Francis, 597 So.2d at 60. A determination of the weight of the evidence is a question of fact; and in a criminal case such a determination is not subject to appellate review. LSA-Const. art. V, § 10(B); LSA-C.Cr.P. art. 858; State v. Korman, 439 So.2d 1099, 1101 (La.App. 1st Cir.1983). An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1st Cir.1985).
At the trial, defendant argued that the discrepancy in the dates should create reasonable doubt in the jurors' minds. Although Gonzalez's notations listed December 6, 1991 (at a time which would have been before the offense), as being the date that he received the evidence, both Rhodes and Gonzalez testified that the transfer occurred on the next day. Gonzalez also testified that he discovered his mistake when he reviewed the reports a few days after the offense. As soon as he discovered his error, he notified the district attorney's office and corrected the date on the evidence envelope (Exhibit 5). Under these circumstances, the jury was free to accept the testimony of Rhodes and Gonzalez. The discrepancy in the dates on the evidence forms does not render the evidence introduced in this case insufficient. The assignment of error lacks merit.

CONCLUSION
For the above reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.