609 So.2d 950 (1992)
STATE of Louisiana
v.
Leroy KNIGHTEN.
No. 92-KA-0341.
Court of Appeal of Louisiana, Fourth Circuit.
November 24, 1992.
*951 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Harry F. Connick, Dist. Atty. for Orleans Parish, Mark Pethke, Asst. Dist. Atty. for Orleans Parish, New Orleans, for plaintiff/appellee.
Before KLEES, BYRNES and WALTZER, JJ.
WALTZER, Judge.
This Court is called upon to determine whether the trial court's denial of defendant's motion to quash the jury was correct in light of defendant's claim that the prosecution used its peremptory challenges in a discriminatory manner to exclude black venirepersons from the jury.
Defendant, Leroy Knighten, was charged with violating LSA-R.S. 40:1785, illegal possession of an unregistered firearm, on August 11, 1991. After a preliminary hearing in which the trial court found probable cause and denied defendant's motion to suppress the evidence, the defendant elected to have a trial by jury. A six member jury was selected.
In the jury selection process, a fourteen member venire was initially called; the prosecutor conducted voir dire, and four jurors were chosen. A seven member venire was then called from which the two remaining jurors were chosen. For both venire panels, voir dire was conducted with the potential jurors seated in the jury box. With the exception of a few questions posed to specific venirepersons, the prosecutor's comments and questions were directed to the collective group of potential jurors seated in the jury box. The prosecutor exercised all six of her available peremptory challenges on black venirepersons.
After the jurors were selected, but before they were sworn, defense counsel raised a constitutional challenge to the State's use of its peremptory exclusions under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defense counsel then motioned the court to quash the jury. Upon hearing defense counsel's arguments, the trial judge asked the prosecutor to give race-neutral reasons for her peremptory exclusions. After listening to the prosecutor's reasons, the trial judge denied defendant's motion to quash the jury. A trial was held, and the six *952 member jury found the defendant guilty as charged. The defendant was sentenced to three years at hard labor.
The sole assignment of error raised on appeal is the trial court's denial of defendant's motion to quash the jury. Defendant argues that the trial court was in error in light of the Supreme Court decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and the cases that follow. We agree with the defendant, and reverse the trial court.
Discriminatory use of peremptory challenges by a prosecutor to exclude potential jurors based solely on race has been long considered a constitutional violation. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The development of the law regarding this issue has revealed two distinct constitutional rights. Initially, in Swain and Batson, the Supreme Court established that discriminatory use by a prosecutor of his peremptory challenges to exclude members of the criminal defendant's race from the jury violated the equal protection rights of the defendant. Here, the Supreme Court focused primarily on the constitutional right of the defendant to be tried by a jury of his peers. Swain v. Alabama, 380 U.S. at 203-204, 85 S.Ct. at 826-827; Batson v. Kentucky, 476 U.S. at 85-90, 106 S.Ct. at 1715-1718. Five years after Batson, the Supreme Court determined that discriminatory use of peremptory challenges by a prosecutor violated the Constitution even when the race of the defendant and the excluded jurors were not the same. In that case, the Supreme Court determined that the right of the potential juror to not be excluded on account of race was being violated, and that the criminal defendant was an appropriate party to raise the excluded juror's claim. Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). This Court is thus obliged to determine whether the constitutional rights of either the defendant or the excluded jurors have been violated.
The Supreme Court in Batson held that the defendant must first establish a prima facie case of discrimination. The defendant must show facts and relevant circumstances which raise an inference that the prosecutor has used his peremptory challenges to exclude potential jurors on account of race.[1] In making the determination of whether the defendant has fulfilled his initial burden of establishing a prima facie case, "the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecution against black jurors and any questions or statements by the prosecutor during voir dire examination in exercising his challenges which may support or refute an inference of purposeful discrimination." State v. Collier, 553 So.2d 815, 819 (La. 1989); Batson, 476 U.S. at 96-97, 106 S.Ct. at 1722-1723. Once the defendant has established a prima facie showing of discrimination, the burden shifts to the prosecutor to show his race-neutral reasons for his peremptory strikes. The prosecution's reasons need not rise to the level of cause, but must be more than the prosecutor's assertion of good faith or an explanation amounting to nothing more than a pretext for discrimination. The neutral explanation must be one which is clear, reasonably specific, legitimate and related to the particular case. State v. Collier, 553 So.2d at 820; see also Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723. Finally, the ultimate burden of persuasion is on the defendant. State v. Thompson, 516 So.2d 349, 354 (La.1987); reh. den. (Jan. 1988).
We initially note that in the case currently before us defense counsel raised *953 his Batson claim before the jury was sworn. His motion to quash the jury was thus timely. State v. Williams, 524 So.2d 746 (La.1988).
The first issue which we will examine on review is whether the defendant sufficiently established a prima facie case that the prosecutor used her peremptory strikes in a discriminatory manner. The trial judge never indicated whether the defendant made the requisite showing of facts and circumstances to establish an inference of discrimination. The trial transcript reveals that the trial judge, immediately after defense counsel raised a Batson claim, asked for the prosecution to give race-neutral reasons for its peremptory strikes. In State v. Collier, the Louisiana Supreme Court determined that where a trial judge, without expressly ruling on the issue, asks that race-neutral reasons be given, the reviewing court may conclude that a prima facie case existed. State v. Collier, 553 So.2d at 819, n. 5. However, this Court has previously held that the trial court need not find a prima facie case of discrimination, but may ask the prosecution to give its raceneutral reasons for its peremptory strikes as a precaution in the event that the appellate court determines that a prima facie inference existed. State v. Granier, 592 So.2d 883, 885 (La.App. 4th Cir.1991); see also State v. Collier, 553 So.2d at 819, n. 5.
Based upon the facts and circumstances, as evidenced by the trial record, we find that a prima facie showing of discrimination existed at the time the defense raised its Batson claim.[2] The prosecutor used all six of her available peremptory challenges on African-American citizens. This was done after a very general voir dire, during which the prosecutor addressed the venire panel collectively as a group.[3] Of the six African-Americans struck by the prosecutor without cause, the prosecutor conversed with only one during voir dire. The final composition of the jury was five whites and one black. These facts in addition to the comments made by the defense attorney while raising a Batson claim,[4] were sufficient to establish an inference *954 of discrimination. The fact that the trial jury ultimately was composed of five white jurors and one African-American does not defeat a Batson claim. State v. Collier, 553 So.2d at 819. The burden was then on the prosecutor to give her raceneutral reasons in order to rebut the inference of discrimination.
We understand that the prosecutor's reasons for peremptory challenges need not rise to the those required for challenges for cause. However, the prosecution may not simply rely on assertions of good faith or explanations which are merely pretext for discrimination. Our Louisiana Supreme Court has stated,
If trial courts were required to find satisfactory any reason given by the prosecutor not based on race, only prosecutors who admitted point blank that they excluded veniremen because of their race would be found in violation of equal protection. State v. Collier, 553 So.2d at 821.
The Supreme Court went on to describe the standard with which a trial court should view the prosecutor's reasons.
A judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable and, second, not a pretext. These two requirements are necessary to demonstrate `clear and reasonably specific... legitimate reasons.' Batson, 476 U.S. at 89, n. 20, 106 S.Ct. at 1724 n. 20. Moreover, they serve the goal of demonstrating a `neutral explanation related to the particular case to be tried,' Id., at 89, 106 S.Ct. at 1723, and that the questioned challenges were not exercised solely because of the prospective juror's race. State v. Collier, 553 So.2d at 821 [citing State v. Slappy, 522 So.2d 18, 22 (Fla. 1988) ]
The nature of a Batson claim requires that we give much deference to the trial court's determinations. It is the trial judge, as opposed to reviewing courts, who is present and witnesses the entire voir dire process. In most cases, it is the trial judge who is best able to determine whether the proffered race-neutral reasons are at all grounded in facts or circumstances evidenced during voir dire. "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenges." Hernandez, ___ U.S. at ___, 111 S.Ct. at 1869. As determinations of credibility are determinations of fact, this Court should not reverse such a finding on review.
Consequently, the unique position a trial judge possesses in Batson claims makes it imperative that he or she properly weigh the arguments and explanations of the defense attorney and the prosecutor as he or she would weigh any disputed fact. The trial judge may not simply provide a "rubber stamp" approval for any race-neutral reason, or give only a cursory following of the procedure set forth in Batson. State v. Collier, 553 So.2d at 821. The constitutional rights of both the defendant and the prospective juror are too important.
This Court must therefore determine whether the trial court applied the correct standards, properly weighed the facts and circumstances before it, and was not clearly erroneous in its finding that the prosecution's proffered explanations were reasonable, race-neutral, not a pretext, and legitimately related to the particular case.
The trial record clearly reveals the four reasons given by the prosecutor for her peremptory strikes: (1) that she is African-American, (2) that some of the potential jurors were inattentive and distracted during portions of the voir dire, (3) that two of the prospective jurors had either criminal or civil arrest records, and (4) that one of *955 the venirepersons had served on a previous jury which returned a not guilty verdict.[5] We will address each of the prosecution's reasons for its peremptory exclusions of African-American jurors to determine if they were sufficiently credible and raceneutral to establish that no discrimination occurred.
The prosecutor's initial comment that she is African-American was simply made as a general statement introducing her reasons for each excluded juror. The prosecutor did not relate this comment with any of the specified reasons subsequently given. This comment is thus not legitimately related to any particulars in the case and is merely an assertion of good faith. We know of no holdings which state that African-American prosecutors are automatically exempt from the requirement that peremptory challenges be non-discriminatory. This rebuttal is the same as the type of response the Supreme Court in Batson found insufficient. "Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or `affirming his good faith in making individual selections.'" Batson, 476 U.S. at 98, 106 S.Ct. at 1723-1724 [citing Alexander v. Louisiana, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1972) ]
In her second reason, the prosecutor stated that some of the members on the venire were inattentive and distracted. The fact that the prosecutor tendered this simple and nondescriptive explanation four times concerning prospective African-American jurors, without pointing to anything specific about those persons' conduct, gives the appearance of mechanical statements without substance. However, it is not unconstitutional to exclude jurors for not being attentive or interested enough in the proceedings. The trial judge, who was able to observe the venire during voir dire, was in the best position to know if this reason by the prosecutor had merit. Because the trial record cannot indicate the attentiveness of the venire members during voir dire, this Court must defer to the trial court's determination of whether this reason was legitimate and related to the particulars of the case.
In her third proffered reason, the prosecutor explained that two of the excluded jurors had either previous criminal or civil arrests. Defense attorney alerted the judge to the fact that the arrest records of the venire members were not made available to him, and that he knew of no prior arrests. Furthermore, the prosecutor never entered the alleged arrest records into the trial record or even showed them to the judge or opposing counsel; nor did the trial judge ever ask to see these records. We believe the trial court was in error when it accepted this proffered explanation as a legitimate race-neutral reason for excluding those jurors.
*956 We understand that other courts have accepted prior arrests as legitimate raceneutral reasons for excluding jurors. U.S. v. Williams, 822 F.2d 512, 515 (5th Cir. 1987); State v. Powell, 598 So.2d 454, 462 (La.App.2d Cir.1992).[6] However, the circumstances surrounding those peremptory challenges are substantially different from the ones exercised in the case presently before us. In Williams, a narcotics case, a venire member was excluded by peremptory challenge because "he had been previously arrested by a government witness and was reputed to use narcotics." U.S. v. Williams, 822 F.2d at 515. Furthermore, that venireman had been labeled a "poor" juror by law enforcement officials before the beginning of the trial proceeding. Id., at 515.
In Powell, the prosecutor exercised two peremptory challenges because of prospective jurors' arrest records. In its reasons for the first peremptory challenge, the prosecution cited, by docket number, a prior DWI conviction and three counts of theft which had been dismissed. For the other venire member, the prosecutor stated that the prospective juror was excluded because he "had an open nonsupport case pending against him in the D.A.'s office, and because his son was under an arrest warrant." State v. Powell, 598 So.2d at 462. Furthermore, this prospective juror stated during voir dire that "he did not really want to sit in judgment of another human being," and "that lots of times, they (police) make mistakes, wrong identities." Id., at 462. With respect to the reasons given for the second excluded juror, the Second Circuit stated,
It would have been preferable for the prosecutor to place some evidence of Mr. Brown's (and his son's) criminal cases on the record. We recognize a potential for abuse when the prosecutor's explanation is not grounded on anything clearly established on the record. Id., at 462.
The Second Circuit upheld the trial judge's acceptance of the prosecutor's reasons due to the fact that the defense attorney never contested the validity of the proffered reasons. The appellate court stated that "counsel cannot now (on appeal) demand further explanation." Id., at 463.
In the case currently before us, the alleged prior arrests of the two veniremen were never specifically cited or produced for the trial record, judge, or defense counsel. The trial record reveals that neither of these venire members gave any indication during voir dire that they might be biased against police officers or the State's case. Neither of these venire members stated that they might have a problem sitting in judgment of another person, or that they believed that police officers make mistakes. These venire members never stated anything during voir dire because they were never asked any questions. Neither of these venire members were alleged to be currently engaging in criminal activity. Nor had they been named by an outside law enforcement officer as "poor" jurors. Furthermore, defense counsel did state that he did not have the rap sheets for the venire members, and that he knew of no prior arrests.
The fact that an alleged prior arrest record was used as the race-neutral reason for two of the prosecutor's peremptory exclusions does not form the gravamen of our concern. We understand that a prior arrest may cause an unfavorable view to the State's case. State v. Thompson, 516 So.2d 349, 354 (La.1987). However, when such a bias or prior arrest is not determined through voir dire, which is the very purpose of voir dire, the defendant must have the opportunity to show whether a prior arrest actually exists or that other venire members, not of the same race, with similar prior arrests were not excluded by peremptory challenge. In the present case, defense counsel learned after the fact that *957 the excluded jurors had allegedly been arrested. Thus, he could never ask the jurors any questions concerning the veracity and background of the arrests or the nature of the alleged charge. He could never make a record to show that there might be a confusion in the computer that generated the information withheld from the defense by the prosecutor during voir dire. Additionally, the defense could not demonstrate during voir dire that these presumptively innocent citizens were not arrested at a date and time when African-American citizens were arrested under statutes long ago held unconstitutional.[7] To ask about arrests on general voir dire may have been embarrassing for the potential juror, yet, it is entirely possible that white jurors may also have been similarly situated.
We simply cannot tell from this record how the prosecutor determined that the challenged jurors had arrest records. We have no more than unsworn statements of the prosecutor unaided by exhibits of records, affidavits or cross-examination. The fact that the prosecutor did not disclose the alleged arrest information to the defense until her challenges had been made, precluded the defense from developing an adequate record on appeal. As the defense attorney is protecting the constitutional rights of both the defendant and the excluded juror, he must be given the opportunity to show that the prosecutor's reasons are either not legitimate or merely pretext. Furthermore, the trial judge, in order to properly weigh the evidence, would also need to see the arrest records to be able to make the same determination. Without the prosecutor producing such records, neither the defense attorney nor the judge would be able to determine whether the prosecutor's reasons satisfy the requirements established in Batson, 476 U.S. at 98, 106 S.Ct. at 1723-1724.
We, therefore, hold that where the prosecutor uses prior arrest records as a purported race-neutral reason in response to a Batson claim, he must provide the defense attorney with evidence of those records, if the defense attorney requests further proof of the prior arrest, and that the arrest records be furnished to the trial judge and be put on the record.
The prosecutor attached to his brief on appeal a list of all potential jurors for the month of December 1991. On that list are hand-written notations by someone who allegedly checked out the jurors' alleged criminal background prior to the various jury selection processes in the Criminal District Court. This list cannot be considered by this Court as competent evidence. Just as the defendant may not ask for further proof of the prior arrests of venire members on appeal, nor can the prosecution provide its proof on appeal. Such evidence must be offered at trial. A reviewing court is not in the position to consider evidence not produced at trial. State v. Baptiste, 573 So.2d 268 (La.App. 4th Cir. 1991). In light of the circumstances of this case, we find the trial court in error for accepting the alleged prior arrests as a legitimate, race-neutral reason for the prosecutor's first and third peremptory challenges.[8]
*958 The prosecutor's sole explanation for its sixth peremptory challenge was that the prospective juror had served on a jury in a prior burglary case, which was supposedly a "good case", and had returned a verdict of not guilty. However, two other venire members stated that they had served on that same jury and had also returned not guilty verdicts. Other courts have rejected explanations for challenges where the prosecutor failed to exclude other prospective jurors, who were not of a racial group, who shared the same characteristic as that claimed as the reason for the challenge. State v. Collier, 553 So.2d at 822; see also U.S. v. Clemons, 843 F.2d 741 (3rd Cir.1988); U.S. v. David, 803 F.2d 1567 (11th Cir.1986); State v. Gilmore, 103 N.J. 508, 511 A.2d 1150 (1986); State v. Slappy, 522 So.2d 18 (Fla.1988). The prosecutor did not pursue any consistent, trial-related strategy of striking jurors with the same or similar characteristics. Although these prospective jurors disclosed that they had served in a burglary trial and returned a verdict of not guilty, the prosecutor peremptorily challenged the African-American juror, but did not challenge the white jurors who also had voted not guilty in the same case. As no other reason was given for excluding this juror, we find the trial court in error for accepting the prosecutor's reason as race-neutral, legitimate, and not a pretext.
To deny the excluded venire persons the honor and privilege of participating in our system of justice based on the record before us, violates the equal protection rights of the defendant and those excluded from the jury. If the prosecutor believes that a prospective juror harbors biases against the prosecution, the issue can be explored in a rational way that consists with respect for the dignity of persons. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability to consider impartially evidence presented at trial. Selection procedures that purposely exclude black persons from juries undermine public confidence in the fairness of our system of justice. Batson, supra, 476 U.S. at 87-88, 106 S.Ct. at 1718.
We, therefore, find that three of the prosecutor's exclusions violated the constitutional rights of the defendant and those excluded jurors. As only one discriminatory exclusion is required to prove a Batson claim, we find that the trial court was in error in not granting the defense attorney's motion to quash the jury.
For these reasons, the conviction and sentence are reversed, and this case is remanded to the trial court for a new trial.
REVERSED AND REMANDED.
NOTES
[1] In Batson, the Supreme Court ruled that a prima facie case was established when the defendant showed that he is a member of a cognizable racial group, and that the prosecutor has used his peremptory challenges to purposely exclude members of that racial group from the jury. Batson, supra, 476 U.S. at 95-97, 106 S.Ct. at 1722-1723. In a more recent opinion, the Supreme Court ruled that the same constitutional claim existed when the defendant is not a member of the racial group purposely excluded from the jury. Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Thus, the defendant, in establishing his prima facie case, no longer needs to show that he is a member of a cognizable racial group. State v. Granier, 592 So.2d 883 (La.App. 4th Cir.1991).
[2] We note that the U.S. Supreme Court has stated that once the prosecutor has given race-neutral reasons for his peremptory challenges, the issue of whether a prima facie case was established is moot. Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). We understand this case to mean that once the prosecution proffers its race-neutral reasons, a trial court cannot then determine that a prima facie case did not exist, but must proceed to the ultimate conclusion of whether the defendant has fulfilled his burden of proving that the prosecutor discriminated in his peremptory exclusions. Even if the prima facie issue is moot, we choose to follow the burden of proof analysis set forth in Batson, 476 U.S. at 94-99, 106 S.Ct. at 1722-1724, so that we may structure our review of the evidence, and as a guide for trial courts. We believe the Supreme Court allows us to view the facts of the case in this manner. Hernandez, ___ U.S. at ___, 111 S.Ct. at 1873.
[3] Two venire panels were called before the trial court for voir dire. First, a fourteen member panel, from which four jurors were chosen, followed by a seven member venire panel, from which the remaining two jurors were selected. The judge addressed each panel, explaining their potential roles as jurors, the criminal statute charged in the case, the roles and purposes of the prosecution and defense, and the concept of reasonable doubt.

After the judge, the prosecutor addressed the jury venire. The prosecutor spoke to the panel as a group, reiterating much of what the trial judge had already explained. Only seven or eight questions were ever posed which called for a response from members of the venire. The prosecutor asked: whether anyone on the venire thought that possessing an unregistered firearm should not be illegal; whether anyone would give a police officer's testimony any more or less credibility than another witness; whether anyone would have difficulty in determining the intent of the defendant based upon the facts and circumstances of the case; whether anyone had difficulty in understanding or accepting the concept of constructive possession; whether anyone had difficulty in understanding or accepting the concept of reasonable doubt; and whether anyone had previously served on a jury.
Only the last question received a response. Three members of the venire stated that they had served on a jury in a previous burglary case in section "F", and that the verdict was not guilty.
[4] While raising a Batson claim, the defense attorney explained to the trial judge that all six of the prosecution's peremptory strikes were exercised on black venirepersons, and that the jury was composed of five whites and one black. Defense counsel further explained that at a point when two seats on the jury needed to be filled, the selection process was basically in the hands of the State due to the fact that the defense had used up all of its peremptory challenges. While two black venirepersons were available to fill those seats, the prosecution exercised its peremptory strikes against them, thereby selecting the following two members on the venire, who were white.
[5] The prosecutor stated the following when asked by the trial judge "to give some race-neutral reason for excluding the six peremptory which you have exercised":

Judge, first of all, I would like to note that I am black. I am African-American and that when we went to the bench to make the cuts, I was the one that vocalized the cuts and I participated in making the cuts.
The first person that we cut, John Taylor, our records indicate that he has one felony arrest and when Mr. Renshaw was questioning him he did not respond to it and he didn't seem favorable to the State.
The second person that we cut was Walter Jackson and he also seemed distracted to Mr. Renshaw's questions.
The third person that we cut was Odell Jarvis. We cut this person, because our records indicate that he had two City arrests and he didn't seem to react to the State's questions.
The fourth person that we cut was Juanita Stokes. When Mr. Renshaw was explaining the law and when the Court was going over the elements of the law that the defendant is charged with, she did not nod in agreement that she understood the law.
The fifth person that we cut was George Jackson. Mr. Jackson seemed inattentive and distracted. He seemed to be concerned about something else that wasn't in the courtroom.
The sixth person that we cut, Mayrena James, she participated in a murder chargeburglary case in Section "F" and the verdict was not guilty and I thought it was a good case based on what I have heard. I would also like the record to reflect that the State kept Gilbert Labeaud and Gilbert Labeaud is African-American. He is black.
[6] Two prospective jurors also were excluded because they had prior arrests in State v. Thompson, 516 So.2d 349, 354 (La.1987). However, the Supreme Court held that the defendant failed to establish a prima facie case. The Supreme Court then stated that the prosecutor did not need to give race-neutral reasons for his exclusions. The Court, therefore, never determined whether the prosecutor's reasons were legitimate, race-neutral, or related to the particulars of that case. Id., at 354.
[7] We do not hold that there are categories of arrests that can not be used as a valid basis for the exercise of a peremptory challenge. The reason given for a particular peremptory challenge may be trivial, irrelevant, frivolous, whimsical, or even contrary to our own sense of decency, but so long as it is race-neutral, "the defense has no standing to complain of how the State exercises its peremptory challenges." State v. Nix, 327 So.2d 301, 326 (La.1976); see also State v. Melton, 296 So.2d 280 (La.1974); State v. Smith, 263 La. 75, 267 So.2d 200 (1972). Our concern lies with judging not the integrity of the prosecutor's reasons, but rather the veracity of his explanation that he has not discriminated. We do not propose to resolve the issue of whether arrests which were racially and unconstitutionally motivated under the old Jim Crow laws may constitute a race-neutral reason for a peremptory challenge. It is entirely possible that while the arrest may have been racially motivated, the use of that arrest as a reason for a peremptory challenge does not necessarily exhibit a discriminatory intent.
[8] We note that the prosecutor's reason for the first peremptory strike stated not only the venire member's alleged prior arrests, but also that when the prosecutor "was questioning him he did not respond to it." However, the trial record clearly indicates that this venire member was never asked about a prior arrest.

For her third peremptory challenge, the prosecutor stated, "our records indicate that he had two City arrests and he didn't seem to react to the State's questions." No one on the venire responded to any of the State's questions with the exception of three venirepersons answering that they had served on a previous jury and two venirepersons stating what their occupation was before retiring.