633 So.2d 1369 (1994)
STATE of Louisiana
v.
Allen DABNEY.
No. 91-KA-2051.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1994.
*1371 Harry F. Connick, Dist. Atty., Mark D. Pethke, Asst. Dist. Atty., Orleans Parish, New Orleans, for State.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before LOBRANO, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
The defendant, Allen Dabney, was charged with first degree murder of Kristin Bordelon, who was killed in the course of a robbery. LSA-R.S. 14:30(1). A twelve member jury found the defendant guilty of second degree murder, and he was sentenced to life imprisonment at hard labor without benefit of parole, *1372 probation or suspension of sentence. His motion for a new trial was denied.

FACTS:
Sandra Ratka testified that she and the victim, Kristin Bordelon, worked as dancers at a Bourbon Street bar. On May 2, 1990, the two left work at midnight in Bordelon's car. On the way home, Bordelon stopped the car at an intersection to buy crack cocaine. Three black males approached her car. The defendant told Bordelon to drive around the block. She did so and returned to the same spot and parked. The same three black males approached the car. Bordelon pulled out some money to give the defendant. He then reached into the car and said, "Give me that money white girl." Bordelon pulled back from the window. The defendant then shot her in the head. He reached into the car, took the money out of her hand, and fled. Ratka got into the driver's seat and drove the car to a nearby Majik Mart and called 911. She later identified the defendant in a photographic line-up.
Detective John Rice answered the call and took a statement from Ratka. Later that day, at 6:30 p.m., he received calls from Brenda Handy and a confidential informant. He obtained an arrest warrant and arrested the defendant. Later, he conducted photographic line-ups with Ratka and Handy. Both identified the defendant.
Handy testified her car broke down in the Majik Mart parking lot. She went for help. She saw the victim and Ratka drive around the block and stop. She saw "Allen, Calvin and Todd" approach the car. The defendant stood near the driver's window. Handy turned a corner and heard one shot. She looked back to see the defendant standing near the driver's window. She saw him put a pistol in his pants. She called Rice later that day and subsequently identified the defendant in a photographic line-up.
Diane Alexis testified for the defense that she was sitting on her front porch the night of the crime. She saw the car, saw the three men approach, and witnessed the shooting. She said she has known the defendant for two years, that at one time he lived with her, and that he was not among the three men. She said she knew that the defendant was with her daughter at 1721 Forstall Street. She testified that she knows Brenda Handy, that Handy was under the influence of drugs on the night of the crime, and that she did not see Handy on the street that night. She initially thought that the crime occurred between 7 and 8 p.m., but later remembered that it occurred between 10 p.m. and 1 a.m.
Yolanda Alexis, Diane Alexis's daughter, testified that the defendant was with her at 1727 Forstall Street when she heard the shot. They ran to the corner, and saw two men running away and the victim's car leaving the scene.
Diane Alexis, daughter of the above Diane Alexis and sister of Yolanda Alexis, testified she was with Yolanda and the defendant at Yolanda's house. When they heard the shot, they ran to the corner and saw the victim's car leaving the scene.
Adrina James said she was inside her house when she heard the shot. She looked out the window and saw the defendant standing with Diane and Yolanda Alexis. She saw the victim's car leaving the scene.
Sergeant Steve Gaudet testified for the defense that he was among the officers who answered the 911 call. He said Ratka could not give a full description of the perpetrator and that she appeared uncertain of details. He explained on cross that as one of the first officers on the scene, his job was to find out the gist of events. Once homicide detectives arrived, they took over the investigation.
Charlene Harvey, the defendant's foster mother, said that Handy has called her constantly since the crime. Handy told her that she and the defendant had an argument over drugs and that she had given him her car to pay for drugs she had used. He kept the car too long, so Handy struck him and he beat her up. Handy saw the defendant's arrest as a chance to get him off of the streets. Handy told Harvey that she had taken Ratka to the area and pointed the defendant out to her before Ratka identified him in the photographic line-up.
Calvin Wallace, the defendant's foster brother, said he had seen the defendant's car in the neighborhood numerous times. On *1373 the night of the crime, he saw a mob of people around the car trying to take the victim's money. He heard tires squeal, then heard a shot. He walked over and saw Todd Bourgeois put a gun in his pants. He said he had seen the defendant near the younger Alexises' house before the crime, and he saw the defendant walk up to the crime scene from that direction after the crime had already taken place. He said that after the crime, he hid the defendant in his house.
The defendant testified he was at the younger Alexises' house when they heard the gunshot. Because he was in a driveway, he could not see the crime scene. He denied shooting the victim.

ASSIGNMENTS OF ERROR
The defendant alleges that:
1. The prosecution improperly used peremptory challenges to exclude jurors on the basis of race.
2. The trial court allowed the admission of hearsay which prejudiced the defendant.
3. The trial court improperly allowed the prosecution to introduce evidence of the defendant's other crimes.
4. The trial court erred in excluding evidence that another man confessed to the crime.
5. The trial court erred by denying a motion for a new trial.

ASSIGNMENT OF ERROR ONE:
Following voir dire, the defense made a timely objection to the State's alleged improper use of peremptory challenges under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); as accepted by this state in State v. Thompson, 516 So.2d 349 (La.1987), cert. den. Thompson v. Louisiana, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).
In Batson, the United States Supreme Court discussed the criteria to establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecution's exercise of peremptory challenges. In Thompson, the Louisiana Supreme Court stated, "To establish a prima facie case under Batson, the defendant must show that he is a member of a cognizable racial group and that the State has exercised peremptory challenges to remove members of his race from the petit jury." Id. at 353. A "cognizable racial group" as defined by the United States Supreme Court in Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) is "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied." Once the prima facie showing has been made by the defendant under Batson, the burden shifts to the State to put forward a neutral explanation for challenging black jurors. Batson, supra; Thompson, supra.
More recently, the United States Supreme Court has held that a criminal defendant may object to the race-based exclusion of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). "Although a defendant has no right to a `petit jury composed in whole or in part of persons of [the defendant's] own race,' Strauder v. West Virginia, 100 U.S. (10 Otto) 303, 305, 25 L.Ed. 664 (1880), he or she does have the right to be tried by a jury whose members are selected by non-discriminatory criteria." Powers v. Ohio, 499 U.S. at 404, 111 S.Ct. at 1367. "We hold that the Equal Protection Clause prohibits a prosecutor from using the state's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race." Id., 499 U.S. at 409, 111 S.Ct. at 1370.
In State v. Collier, 553 So.2d 815, 819 (La.1989), the Louisiana Supreme Court stated as follows:
The trial judge must determine whether the defendant has established the requisite prima facie case. In making this determination, the trial judge should consider all relevant circumstances, including any pattern of strikes by the prosecutor against black jurors and any questions or statements by the prosecutor during voir dire examination in exercising his challenges *1374 which may support or refute an inference of purposeful discrimination.
The trial judge need not find a prima facie case of purposeful discrimination to require the prosecution to explain its peremptory challenges as a precaution in the event the appellate court determined there was a prima facie showing. Id. at fn. 5. If the trial court finds a prima facie showing of the exclusion of jurors based solely upon their race, the burden shifts to the prosecution to show its challenges were exercised for reasons other than race. This showing may be something less than a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of this juror's race. Id. at 820. The neutral explanation must be one which is clear, reasonable, specific, legitimate and related to the particular case at bar. Id. The trial court must then assess the weight and credibility of the explanation in order to determine whether there was a purposeful discrimination in the use of challenges. State v. Granier, 563 So.2d 1354 (La.App. 4th Cir. 1990), writ granted in part, denied in part 578 So.2d 528 (La.1991), on remand 592 So.2d 883 (La.App. 4th Cir.1991), writ denied 600 So.2d 1334 (La.1992).
In examining the prosecutor's reasons in Thompson, the Louisiana Supreme Court concluded that the prosecution did not exercise its peremptory challenges in a discriminatory fashion. Even though Thompson failed to prove a prima facie case of purposeful discrimination, thus also failing to shift the burden of proof to the prosecutor, the Court examined the prosecutor's reasons for challenging the jurors. Two of the challenges were based on the juror's prior arrest. Another was based on the age of the juror.
In Granier, the prosecutor's reasons for challenging potential black jury members included challenges against jurors who had criminal charges personally, challenges against potential jurors who had family members with criminal convictions, and a challenge against a juror who was under investigation. Another juror had a back problem for which she was receiving pain medication and could not sit for a long time. The prosecutor challenged a juror because he knew the defense attorney's brother, and also because of that juror's age. But before the prosecutor had expended his peremptory challenges, he accepted a black juror, stating that the juror was middle aged and had prior jury experience. The trial court, having assessed these reasons for the exercised challenges, found them to be racially neutral, citing Mascaro v. Davis, 420 So.2d 755 (La.App. 4th Cir.1982), where this court found that the applicable standard of review required that this court give great weight to the factual conclusions of the trier of fact. This court found that the trial court had not erred in denying Granier's motion to dismiss the jury and to grant a mistrial.
In State v. McNeil, 613 So.2d 752 (La.App. 4th Cir.1993), writ granted in part, vacated in part on other grounds 623 So.2d 1320 (La.1993), the trial court found a prima facie showing of the exclusion of jurors based on race. It conducted a hearing in chambers wherein the prosecutor stated he dismissed one juror who was nineteen and who nodded his head in disagreement with the prosecutor during voir dire, one juror who had just sat on a hung jury and had a felony arrest and a municipal arrest, one juror because she was related to a prosecutor, and three jurors who were inattentive and nonresponsive. This court found that the trial court had not erred in finding that the State had exercised its challenges for reasons other than race. McNeil, 613 So.2d at 756.
In this case, the record does not reveal the racial composition of the jury. The State exercised nine peremptory challenges. Although defense counsel stated that all of the challenges were used against black people, it is obvious in the transcript and the trial judge determined that one of the jurors the State excused was not black, but was Latin, and was not in the group covered by the Batson challenge.
The trial court did not determine whether or not a prima facie case was established; however, when the trial court requests race-neutral reasons for a party's peremptory strike, a reviewing court may conclude that a prima facie case existed. Collier, 553 So.2d at 819, fn. 5; State v. Knighten, *1375 609 So.2d 950, 953 (La.App. 4th Cir.1992). Furthermore, under Batson, based on the record herein, a prima facie case existed, based on the State's exercise of nine peremptory challenges, eight against African-Americans.
The trial court correctly requested the State to explain why it utilized its peremptory challenges against blacks.
The reasons given for challenging juror 148 were his young age, the fact that he had prior arrests, and the fact that he was unresponsive. In accordance with State v. Knighten, supra, the defendant contends that where the prosecutor uses privileged information, such as prior arrest records of a potential juror, the State must provide the defense with the information and include the information as part of the record, which it failed to do.
In Knighten, the prosecutor conducted voir dire with the potential jurors seated in the jury box and with a few exceptions directed all questions to the collective group. She exercised all six of her available peremptory challenges on black venirepersons. After the jurors were selected, but before they were sworn, defense counsel raised Batson and moved to quash the jury. The trial court then asked the prosecutor to give race-neutral explanations. The trial court did not rule on whether a prima facie case had been proven. This court found one had been proven since the prosecutor used all six of her peremptory challenges on blacks, the prosecutor had addressed the jury venire collectively, and she conversed with only one black during voir dire. The final composition of the jury was five whites and one black. This court found that these facts established an inference of discrimination. The prosecutor gave among her reasons for exclusion: (1) that some of the potential jurors were inattentive and distracted, (2) that two of the prospective jurors had either criminal or civil arrest records, and (3) that the venire persons had served on a previous jury which returned a not guilty verdict. As to the first explanation, the court ruled that, since the trial record cannot indicate the attentiveness of the venire members during voir dire, this court must defer to the trial court's determination of whether the reason was legitimate and related to the particulars of the case. As to the second reason, the defense attorney alerted the judge to the fact that the arrest records of the venire members were not made available to him, and that he knew of no prior arrests. Furthermore, the prosecutor never entered the alleged arrest records into the trial record or even showed them to the judge or opposing counsel, nor did the trial judge ever ask to see the records. Accordingly, the court found that the trial court had erred in accepting this explanation. As to the third reason, the prosecutor excused a black who had voted not guilty in a prior jury, but did not excuse two whites who had voted not guilty. Since no other reason was given for the exclusion of the black, this court found the trial court was in error for accepting the prosecutor's reason as race-neutral, legitimate and not a pretext. The court found that three of the prosecutor's explanations violated the constitutional rights of the defendant and those excluded jurors and that since only one discriminatory exclusion is required to prove a Batson claim, the trial court was in error in not quashing the jury. The court reversed and remanded and held that "where the prosecutor uses prior arrest records as a purported race-neutral reason in response to a Batson claim, he must provide the defense attorney with evidence of those records, if the defense attorney requests further proof of the prior arrest, and that the arrest records be furnished to the trial judge and be put on the record." Knighten, 609 So.2d at 957.
The State violated the Knighten requirements in this case. However, we find this error harmless because the defense attorney failed to request the records from the prosecutor or alert the judge that the defense was unaware of the prior arrests. It is not our purpose to dilute or weaken the Knighten criteria; however, counsel for the defense must request the arrest records from the State or alert the judge that the records were not available to counsel or that counsel was unaware of the juror's prior record. Failing to comply with any of these standards constitutes a waiver of any requirement that the State produce the arrest records. *1376 However, whenever defense counsel or the court requests production of the records in the possession of the State, the State must produce the evidence to opposing counsel or the court.
The prosecutor's reasons for peremptorily challenging Juror 76 were based on the witness' belief that convicted felons should be allowed to carry guns and that the State should be required to prove a motive for the crime. Defense counsel did not traverse this explanation. This proffered reason is race-neutral, is reasonable, and is not a pretext. We find this challenge proper.
The prosecutor's explanation for excusing Ms. Pecour (juror number not located in the record) was because she previously served on two jury trials. In one, the defendant was acquitted and, in the other, the jury was unable to reach a verdict. She was unresponsive to the State's questions. The past history of a juror's behavior while serving on a jury panel is race-neutral and reasonable. It is a legitimate reason for either side to exercise a peremptory challenge.
The State excused Juror 101 because she changed her verdict from guilty to not guilty in a prior trial. For the reasons stated above, we find this explanation satisfactory for the peremptory challenge.
The prosecutor excused Juror 194 because she served on a jury panel that was unable to reach a verdict. Additional reasons were that she was unresponsive to the State's questions and she was initially opposed to the death penalty, then changed her opinion and said she could consider the death penalty. Defense counsel did not traverse these statements. We hold that these reasons are race-neutral and a reasonable basis for exercising a peremptory challenge.
The prosecutor excused Juror 42 because she voted not guilty on a previous jury although the jury returned a verdict of guilty as charged. Additionally, she was unresponsive. For the reasons stated herein above, we find that these reasons are race-neutral and are reasonable for exercising a peremptory challenge.
The State exercised a peremptory challenge against Juror # 360. The reason proffered was that she was 21 years old and would identify with the defendant who was also 21 years old. Additionally, she was unresponsive. The defendant does not traverse this explanation. One well-known philosophy of jury selection is that every lawyer seeks a jury of the same type of person as their client. Each side wants a jury which will be able to identify with the prosecution, the victim, or the defendant. Therefore, the State's proffered reason of age identification with the defendant is a valid race-neutral ground to peremptorily challenge this juror.
The prosecutor excused Juror # 159 because at first she stated that she could not consider the death penalty, although she later changed her mind. This is a valid race-neutral reasonable reason based on the murder charge in this case.
The reason offered by the prosecutor, as justification to peremptorily challenge five jurors, was that the potential jurors were unresponsive. Counsel for the defendant or the court did not traverse this personal observation or conclusion. In Knighten, 609 So.2d at pg. 955, we discussed the non-verbal, inattentive, distracted and unresponsive potential juror. In effect, without any other evidence in the record, we deferred to the trial judge's reasonable discretion and his superior position in the courtroom. Although this is a close Batson issue, because of the ambiguity of the term "unresponsive," under the circumstances in this case, we do not find that the trial court erred in accepting the prosecutor's explanations as racially neutral.
This assignment of error is without merit.

ASSIGNMENT OF ERROR TWO:
The defendant argues the trial court admitted inadmissible hearsay concerning information from a confidential informant on two occasions. At trial, Rice testified that he received a call from Handy that she had witnessed the crime. The prosecutor then asked, "Did you receive any other phone calls or did the Homicide Office receive any other phone calls concerning the crime?" The defense objected. The court ordered the prosecutor *1377 to rephrase the question and be more specific. The prosecutor then asked, "Did the phone caller identify themselves?" The defense again objected. The trial court overruled the objection and Rice answered, "We received anonymous information." The defense moved for a mistrial on this basis. The defense now argues this evidence constituted inadmissible hearsay. However, the contents of the anonymous phone calls were not admitted into evidence. Only evidence that the phone calls were in fact placed was admitted. As such, no out of court statement was admitted and thus no hearsay was admitted.
During closing argument, the prosecutor stated:
... You heard Detective Rice. You heard about his investigation. He received a phone call from Brenda Handy. He received descriptions from Sandra Ratka. He interviewed Brenda Handy. He received phone calls from confidential informants, all leading to one person and that one person is Allen Dabney. (Tr. 286)
The defense moved for a mistrial. The argument did not disclose the hearsay statements contained in these phone calls. The State's references that the information received from various sources leads to the defendant is within the scope of permissible closing argument. The comment is reasonable in light of the factual dispute before the jury, whether the defendant was or was not present at the scene of the crime.
This assignment of error is without merit.

ASSIGNMENT OF ERROR THREE:
The defendant complains of two questions asked defense witnesses regarding whether the defendant was about to sell drugs to the victim. The defendant argues this was impermissible evidence of other prior crimes by the defendant. The State asked Wallace whether the "defendant was on his way to sell her crack cocaine." The State asked the defendant whether he had sold drugs to the victim on earlier occasions. Both times the defendant objected, and the trial court overruled the objection. The defendant requested a mistrial on each occasion.
L.C.E. art. 404(B)(1) provides that evidence of other crimes, wrongs, or acts is admissible when it constitutes an integral part of the act or transaction that is the subject of the present proceeding. The Louisiana Supreme Court has held directly on point that a defendant's display of crack cocaine and a pistol tucked into his waistband, three hours after the victim was last seen alive in his presence and less than two hours before her death, formed an inseparable part of the State's substantial circumstantial evidence linking him to the shooting and was admissible testimony under L.C.E. art. 404(B)(1):
This court has approved the admission of other crimes evidence when it is related to such an extent that the State could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La.1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence § 218 (3d ed. 1940). State v. Haarala, 398 So.2d 1093, 1097 (La.1981).

State v. Brewington, 601 So.2d 656, 657 (La.1992).
Here, the evidence of the drug transaction was even more closely connected to the crime than in Brewington. The victim was actually in the process of handing over money after the defendant told her to drive around the block to pick up cocaine. When the victim told the defendant how much she wanted to buy, the defendant pulled the money out of her hand and killed her. The State could not possibly have accurately presented its case without reference to the cocaine distribution. *1378 Once the evidence was in, the defense attempted to attack the credibility of the State's witnesses by presenting evidence that the defendant was not involved in the drug transaction. On cross, the State had to ask the complained of questions in order to restore the credibility of its witnesses. The questions and answers were part of the direct sequence of events that form the basis of the charge in this case.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR FOUR AND FIVE:
These two assignments of error are consolidated because they relate to the same legal issuewhether the court erred in excluding evidence that Todd Bourgeois told the defendant or a third person that he shot and killed the victim.
At trial, the defense counsel asked the defendant whether he had spoken to Todd Bourgeois while in jail. The defendant said he had spoken to him one or two times. The State then objected. The defense argued that the statements constituted an admission of a crime committed by Bourgeois. The Court sustained the objection on hearsay grounds. The defendant now argues that the trial court erred.
The defendant argues the evidence was admissible as an admission against public interest. Such statements are controlled by L.C.E. art. 804. This article provides certain exceptions in cases in which the declarant is unavailable, to the general rule against admissibility of hearsay statements, as follows:
A. Definition of unavailability.
Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement;
. . . . .
B. Hearsay exception. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
. . . . .
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
When the statement tending to expose the declarant to criminal liability is offered to exculpate the accused, L.C.E. art. 804(B)(3) expressly requires corroborating circumstances indicating trustworthiness. The burden of satisfying the corroboration and trustworthiness requirement is on the accused. State v. Hammons, 597 So.2d 990 (La.1992). That burden may be satisfied by evidence independent of the statement which tends, either directly or circumstantially, to establish a matter asserted by the statement. Circumstantial evidence of the veracity of the declarant as to the portion of the statement exonerating the accused is generally sufficient. Typical corroborating circumstances include statements against the declarant's interest to an unusual or devastating degree, or the declarant's repeating of consistent statements, or the fact that the declarant was not likely motivated to falsify for the benefit of the accused. Id. (citations omitted).
The defense argues that the record contains corroborating evidence and satisfies the foundation requirement for admission as a statement against interest. The defendant claims that the truth of the statement is corroborated by the testimony of Detective Rice. During cross examination, Detective Rice was confronted with his sworn testimony given at the preliminary hearing. He testified as follows:

*1379 Q. Did they indicate whether or not he was the one, the gunman, whether he was the gunman in this case?
A. No, sir. They indicated that he was with them.
Q. He was just with the suspect?
A. Yes, sir.
Q. But he was not the gunman?
A. No, sir.
The record is unclear who "he" refers to. From this testimony, it cannot be determined from the record who the witness was referring to in his earlier testimony. The evidence reveals that three men approached the victim. Thus, the testimony is insufficient to satisfy the criteria for corroborating the admission.
The defendant also claims that the truth of the statement was corroborated by the testimony of Charlene Harvey, the defendant's foster mother, who testified, over an objection from the State, that Brenda Handy told her that she knows Todd Bourgeois shot the victim. This statement, which is hearsay, does not meet the requirements to prove a corroboration, especially in light of the fact that Ms. Handy denied on the witness stand that she saw Todd Bourgeois shoot the victim. Certainly an unverified hearsay statement which is specifically denied by the declarant cannot be used as the basis for corroborating another hearsay statement. This conclusion is further supported by the fact that Ms. Harvey, who had a close personal relationship with the defendant, had her own personal reasons for being less than truthful about the matter.
The defendant also argues that the statements that Bourgeois admitted the murder were corroborated by Calvin Wallace, the defendant's foster brother, who testified that he saw Todd Bourgeois standing alongside of the car with a gun in his hand, putting it in his belt, and then proceeding to run down the street. This testimony would seem to corroborate the hearsay offered by the defendant, but is not sufficient standing alone to make the hearsay statement offered by the defendant admissible under the relevant law for a number of reasons. For example, Wallace pled guilty to being an accessory after the fact. Additionally, Wallace did not testify that he saw Bourgeois shoot the victim, only that he saw Bourgeois standing by the car with a gun in his hand. Finally, we note that Wallace, like Ms. Harvey, had reason to be less than truthful because of his personal relationship with the defendant.
The defendant testified that he spoke to Todd Bourgeois once or twice, but he was denied the opportunity to testify concerning Bourgeois' alleged statements because of a State hearsay objection. The defendant failed to proffer the evidence, but stated that the testimony would be an admission of a crime. The defendant's testimony, that Todd Bourgeois confessed to him, would have been self-serving and uncorroborated.
Since the defendant failed to present sufficient corroborating evidence to indicate the trustworthiness of the alleged admission against interest made by Bourgeois, the trial court did not err in refusing to admit the statement. We find no merit in this assignment of error.
The defendant also made a motion for new trial on the basis of newly discovered evidence which was denied. At the hearing, the defense presented a witness, Jessie Kinnard, who testified that Bourgeois had made a comment to someone whom Kinnard did not know that he had in fact committed the murder. Kinnard did not know the identity of the man to whom Bourgeois made the statement; he said he simply overheard it. He said he did not know when the statement was made, but he assumed it was some time after the prosecution in this case. The statement was allegedly made while a group of young men played basketball. The trial court denied the motion on the ground that Kinnard was very vague and that Bourgeois's name came up during trial as a possible perpetrator and the jury rejected the possibility that he had committed the crime.
L.C.Cr.P. art. 851 provides in part:
The motion for new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. The court, on motion of the *1380 defendant, shall grant a new trial whenever:
. . . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial would probably have changed the verdict.
In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of trial was not due to the defendant's lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably produce a different verdict in the event of a new trial. State v. Knapper, 555 So.2d 1335 (La.1990).
In this case, the State presented a witness, Handy, who said that Bourgeois was present with the defendant when the crime was committed. The defense presented Calvin Wallace who said he saw Bourgeois putting away a gun seconds after the crime was committed. Thus, evidence that Bourgeois was at the crime scene and that he was the person who shot the victim was already before the jury. The jury rejected the defense implication that Bourgeois was the shooter. Therefore, Kinnard's testimony, if introduced at trial, would not have produced a different verdict. The trial court did not err in denying the defendant's motion for a new trial.
These assignments are without merit.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.