JiDUFRESNE, Judge.
This is an appeal from a jury verdict in favor of a following motorist in a rear-end collision case. For the following reasons, we affirm that verdict.
The facts of the accident are generally undisputed. On September 10, 1986, Marguerite Montgomery, plaintiff-appellant, was traveling south in the left lane of Causeway Boulevard at the southern foot of the Airline Highway overpass when a pallet fell off an unidentified flat-bed truck one or two cars ahead of her. There was conflicting evidence as to whether one car got around the pallet and the one directly ahead of plaintiff ran over it before stopping, or whether that car stopped just before the obstruction. In any case, plaintiff made a sudden stop.
Charles Debartolo, defendant-appellee, was returning from a fishing trip in a pick-up truck towing his boat and trailer, and was |2following plaintiff some five or six car lengths behind. He testified that he saw the pallet fall off the truck and applied his brakes, but was unable to stop completely and “tapped” plaintiffs rear bumper. He estimated that he was traveling about 40 mph in the 45 mph speed zone.
Charles Henry, Debartolo’s fishing companion, testified that he became aware of what was happening sometime after Debarto-lo had applied the brakes and when the pickup was two to three car lengths behind plaintiff. He said that the truck first hit the guard fence and curb on the left which slowed it further and that it “barely touched that lady’s bumper; there wasn’t a scratch, there wasn’t a dent, there wasn’t anything on that bumper.” Plaintiff also testified that her car was not damaged. Other evidence showed that Debartolo’s pick-up had about a thousand dollars of damage at the left front fender area, thus corroborating Mr. Henry’s testimony about hitting the guard fence and curb.
Plaintiff, who was then 71 years old, made no complaint of injury at the scene, and everyone drove off in their own vehicles. A week later, on September 17, plaintiffs daughter Margaret found her mother sitting quietly in a dark room. When she asked her mother what was wrong, plaintiff said she had pains in her chest and neck and thought she might be having a heart attack. Both went to the emergency room where plaintiff was examined for possible heart problems, but nothing was found. The hospital notes reflect that she told the staff that her symptoms had occurred off and on over the last l3month, although less severely. The impression of the emergency room physician was that she had suffered an anxiety attack. No mention was made in any of the hospital’s records that plaintiff had been in an automobile accident. In fact, in the daughter’s testimony no connection with the accident was apparently made by her at that time. She did testify, however, that her mother’s mental condition began to decline from about the time of the incident. Specifically, she said that plaintiff became increasingly withdrawn, went out of the house less and less, and became irritable and short with both family members and customers at her popcorn stand at a local mall. Plaintiff asserted that because of her mental state she eventually had to sell her business at a loss because she was incapable of managing it further.
Because of these continuing symptoms, her family urged her to see Dr. Aris Cox, a psychiatrist and she had her first visit with him on February 9,1988, almost a year and a half after the accident. This doctor saw her over the course of six months, and was able to relieve her symptoms with the use of medication. He diagnosed her problem as post-traumatic stress disorder, a condition he described as one sometimes resulting from a very serious trauma, such as warfare or some other very unusual event. He said that he reached this diagnosis by the process of elimination as to any traumas that plaintiff might have suffered at about the time her mental condition began to deteriorate. He also said that he was told that plaintiff had not had the symptoms for which he treated her prior to the accident, but stated that if the symptoms had indeed been present before then, then his | conclusion as to causation would be different.
On cross examination of Dr. Cox, the defense had him review plaintiffs medical records since the mid-1960’s. Those records *160 disclosed that she was repeatedly diagnosed as having anxiety attacks up through the summer of 1986, and had regularly been prescribed various anti-depressant and tranquilizer drugs by various doctors. Dr. Cox said that although he was not aware of some of this information, it did not appear to him that the prior incidents for which she was treated were disabling, and thus he did not regard them as similar to her post accident symptoms.
The defense also questioned plaintiff about a 1983 automobile accident. She twice denied having been in any accident, but when the defense suggested that it happened on Easter Sunday, she suddenly remembered that it was on Easter Saturday, that she had seen a doctor, and had eventually settled the matter with the insurer. She described that incident as follows:
I stopped [in traffic] and this lady ran me up over onto the curbing and almost hit me into a post.
No psychological trauma disorder resulted from this incident.
On the above evidence the jury returned a verdict in favor of the defense. Plaintiff now appeals, and urges five assignments of error. Three of the alleged errors relate to the jury instructions, one relates to the refusal of the trial judge to permit certain argument on grounds there was no evidence introduced to support it, and the fifth alleges that the defense used peremptory jury challenges to improperly ^exclude certain jurors because of their race.
As to the alleged defects in the jury instructions, La.Code Civ.Pro., Art. 1793(C) specifically provides that:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection....
In the present matter, the objections to the instructions were not made until after the verdict had been rendered by the jury and the judge had made that verdict the judgment of the court. Because the objections were untimely, they are considered as having been waived, and under the clear wording of the statute they can not be urged as error on appeal, Sledge v. Continental Casualty Co., 25,770 (La.App. 2 Cir. 6/24/94), 639 So.2d 805; Keith v. Gallioto, 592 So.2d 510 (La.App. 5 Cir.1991).
The next alleged error concerns plaintiffs closing argument. Counsel properly noted that the .defendant had testified that he was going 40 mph and was traveling about 80 feet behind the plaintiff. He then began to calculate the distance a vehicle traveling at that speed would cover per second. At that point defense counsel objected and a bench conference was called. The basis of the objection was that there had been no expert testimony regarding these matters and therefore they were beyond the scope of the evidence. Plaintiffs counsel urged that he was only arguing arithmetic. He asserts here that he wished to point out to the jury that 40 mph translates into 58.66 feet per second, and at that speed it would take about 1.5|6seconds to close the 80 foot gap between the cars. That, however, is the precise reason that the defense objected. The evidence was conclusive that Debartolo applied his brakes before the collision, and the defense argued that the time to traverse the 80 feet with the brakes on would involve factors such as the reaction time of the driver, the road surface, the type of tires, and other factors which could only be addressed by an expert. The trial judge agreed and noted that to give the 1.5 second figure would simply be an incorrect statement of fact. She thus precluded further argument on this point. We find no abuse of the trial judge’s discretion in this ruling, and we therefore reject this assignment of error.
The final issue relates to the use by the defense of four of its five peremptory challenges to strike Black jurors from the panel. Plaintiff urges that these strikes were based on the race of these jurors, in violation of the rule of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), as well as similar state rules.
The parties here agree that purposeful racial discrimination in jury selection is pro *161 hibited, and that this prohibition extends to the use of peremptory challenges. In Holmes v. Great Atlantic & Pacific Tea Co., 622 So.2d 748 (La.App. 4 Cir.1993) the historical development of this principle is discussed at length, and need not be re-iterated. However, the discussion in Holmes about how the issue of purposeful discrimination is to be raised and decided by the courts is pertinent here.
In Batson v. Kentucky, supra, the Court established a three step | Tinquiry in regard to an assertion that peremptory challenges were being used for racial reasons. It noted initially that the party making the allegation bears the burden of proving this fact. At the first step, that party must therefore make a prima facie ease that challenges are being made for improper motives. If such a ease is made, then at the second step the challenger must come forward with an explanation for the strikes that is race neutral. If the explanation is neutral, then at the third step the judge must make a determination as to whether or not the explanation is true, or is rather a pretext for a racial motive.
In the more recent case of Purkett v. Elem, — U.S. —, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the Court explained further the requirement at step two that a reason be race neutral. In that case, the reasons given for the strikes of two Black men was that one had long, unkempt hair, and the other a beard and moustache. The trial judge concluded that these reasons were race neutral at step two, and further ruled that they were not pretextual at step three. The federal appeals court determined otherwise, and noted that the reasons had no bearing on either juror’s ability to be fair and impartial, and further had absolutely no bearing on the particular ease at hand. In re-instating the trial court’s determination, the Supreme Court stated that the appellate court had improperly combined steps two and .three of the inquiry, in effect ruling that the step two explanation had not only to be race neutral, but persuasive as well. It went on to say that:
It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his Rburden of proving purposeful .discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. (— U.S. at-, 115 S.Ct. at 1771)
The Court finally noted that in habeas proceedings in federal courts, factual findings of state courts are presumed correct and may be set aside only if they are not fairly supported by the record.
The standard of appellate review in our courts is similar to the above federal rule in that we can set aside factual findings made in the district courts only when those findings are manifestly erroneous or clearly wrong. In the context of peremptory challenges, the court in State v. Knighten, 609 So.2d 950 (La.App. 4 Cir.1992) stated:
The nature of a Batson claim requires that we give much deference to the trial court’s determinations. It is the trial judge, as opposed to reviewing courts, who is present and witnesses the entire voir dire process. In most cases, it is the trial judge who is best able to determine whether the proffered race-neutral reasons are at all grounded in facts or circumstances evidenced during voir dire, (at 954)
In the present case, when the peremptory challenges were being made the defense used its first two to strike Black jurors, and the plaintiff raised a Batson challenge. The judge asked for reasons and the defense stated that both jurors had stated that they would have no problem in making a large award for psychological damages “without qualification whatsoever.” The plaintiff argued that that was not what the jurors had said, to which defense counsel said that he had written this in his notes. The judge stated that she found those adequate reasons, and voir dire continued. The next juror was also a 13Black, and the defense struck him for the same reason, and the judge again *162 found it adequate. The defense then struck a white person. Its fifth peremptory strike was also a Black juror, and the same reason regarding large awards for psychological damages was asserted. At this juncture, the trial judge stated that it seemed that a pattern of racial strikes was developing and she refused to allow that challenge. Later, yet another Black juror came up. At that point, the defense argued that although it had some objection to this juror as well, it would accept him if it could re-urge its challenge to the previous juror. This was permitted by the trial judge. The final jury panel thus included one Black juror. At the end of the voir dire the defense had used only five of its six allowed peremptory challenges.
On the above facts the trial judge determined that the reasons given by the defense were race neutral, and that they were true and not a pretext for an improper racial motive. As noted above, the trial judge’s determination must given great deference because it is she who saw the entire voir dire, had an opportunity to assess the demeanor of the prospective jurors and the attorneys, and note the various nuances of the process, none of which factors are available to us on the cold record. Admittedly the evidence might have supported a finding of improper motive had the credibility of the attorney giving the explanations been questioned by the trier of fact. However, since the judge believed that the strikes were in fact based on the perceived attitudes of the prospective jurors in regard to large awards for psychological damages, and because it is evident that a rational trier of lipfact could well have reached that conclusion, we must defer to the judgment of the trial judge and affirm her determination of this issue.
For the foregoing reasons, the judgment of the trial court in favor of the defendants is hereby affirmed.

AFFIRMED.